Calvin MYERS, Plaintiff,

v.

COUNTY OF NASSAU, Nassau County Detectives Michael F. O'Leary, Cereghino, The Incorporated Village of Hempstead, Detectives Salerno, Dean Nicosia, Kevin Cunningham, Hempstead Police Officer Brian Jones and Sargent Joseph Sortino, Defendants.

No. CV 08–1998.

United States District Court, E.D. New York.

Oct. 7, 2011.

Grandinette & Serio, LLP, by Anthony M. Grandinette, Esq., Mineola, NY, for Plaintiff.

John Ciampoli, Esq., Nassau County Attorney, by Michael J. Ferguson, Esq., Deputy County Attorney, Mineola, NY, for Nassau County Defendants.

Harris Beach PLLC, by Keith M. Corbett, Esq., Uniondale, NY, for Hempstead Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a civil rights lawsuit arising out of Plaintiff's arrest and subsequent trial on a charge of murder. After Plaintiff was acquitted of the crime with which he was charged, he commenced this federal action. Plaintiff sets forth claims of false arrest,

malicious prosecution, denial of his rights to remain silent and to counsel, and conspiracy to deprive Plaintiff of these rights. All of these federal claims are alleged pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiff also alleges pendent state claims sounding in the same causes of action. Named as Defendants are the County of Nassau (the "County"), Nassau County Detectives Michael O'Leary ("O'Leary"), and Cereghino ("Cereghino") (collectively the "County Detectives"). Plaintiff also names as a Defendant the Village of Hempstead (the "Village"), Hempstead Detectives Thomas Salerno ("Salerno"), Dean Nicosia ("Nicosia") and Kevin Cunningham ("Cunningham"), Hempstead Police Sargent Brian Jones ("Jones") and Hempstead Police Officer Joseph Sortino ("Sortino") (collectively the "Village Defendants"). Presently before the court is the motion of all Defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

For the reasons that follow, the motion is granted on consent as to Defendant Cereghino, and for the reasons set forth below, as to all remaining Defendants.

## BACKGROUND

### I. Factual Background

Defendants' motion papers indicate that the motions before the court are made pursuant to Rule 56 and/or to dismiss the complaint pursuant to Rule 12(c)(1). Because discovery has long been closed, the court has considered the affidavits, depositions and trial testimony submitted in connection with this motion, and there has been fair notice to all parties that Defendants move for summary judgment, the court considers the motions pursuant to Rule 56. The facts set forth below are drawn from the above-references sources, and are construed in the light most favorable to Plaintiff.

## A. *The Murder of Vincent Shelton and the Police Investigation*

On May 12, 2004, an individual named Vincent Shelton ("Shelton") was shot and killed in the vicinity of Stewart Avenue in Hempstead, New York. Hempstead Police Officers Jones and Sortino responded first to the scene. Shortly thereafter, Defendant Nassau County Detective O'Leary, who would became the lead detective on the case, responded to the scene of the murder. Just prior to succumbing to his wounds, Shelton was asked by Jones, "who did this to you?" The Hempstead responding officers state that no name was discernible, but that Shelton may have made a sound ending in either an "l" sound or an "eggh" sound. Myers states that Shelton identified an individual named Vincent McTootle as the killer. Plaintiff has submitted evidence indicating that McTootle was considered, but ruled out, as a suspect during the investigation of the Shelton murder.

The law enforcement officers continued to investigate the Shelton murder. While the Nassau Detectives took primary responsibility for the investigation, they were assisted by the Hempstead police. An important lead in the investigation was obtained by Defendant Hempstead Detective Nicosia within one day of the murder. At his deposition, Nicosia testified that a confidential informant with whom he had worked in the past, later identified as Joseph Perry, approached Nicosia with information about the murder. Detective Nicosia directed Perry to Detective O'Leary, who obtained a statement. In his statement, Perry described facts that transpired on the night of the murder in the apartment of a woman named Anna Flores.

During the course of the investigation of the murder, Detective O'Leary obtained statements from individuals familiar with the circumstances surrounding the night of the murder. Specifically, following up on Perry's account, O'Leary obtained statements corroborating Perry's version of events from those present at the Flores apartment, including Anna Flores and Ray Wooden. Additionally, O'Leary obtained a statement from an individual named Anthony Fore. Fore's statement to O'Leary was made after his arrest for gun possession. While waiting to be processed for that charge, Fore had noticed a poster on the wall of the police precinct seeking information about the Shelton murder. Fore came forward with information that later formed the basis of a statement taken by O'Leary. The statements obtained by police agree upon a version of events, as described below, and indicated that Myers implicated himself in the Shelton shooting.

## B. *Plaintiff's Arrest, Indictment and Trial*

Myers was not arrested for the Shelton murder until January 6, 2006. Part of the reason that Myers was not earlier arrested was because, after the Shelton murder, he began serving a sentence in connection with an unrelated matter at a correctional facility located in Riverhead, New York. On January 6, 2006, the day that he was released from the Riverhead facility, Myers was met in the parking lot adjacent to the facility, and was immediately arrested by Hempstead Detectives Nicosia and Salerno. Nicosia testified that he was instructed, on the morning of the arrest, to accompany Detective Salerno to pick up Myers on drug charges, and to transport him to the Hempstead police armory. Nicosia stated that while he and Salerno were awaiting Myers' release, they noticed that Detective O'Leary was also in the parking lot. Nicosia was surprised to see O'Leary. Despite the presence of Nassau Detectives, Nicosia states that when

Myers was picked up, he and Salerno maintained the intent to transport him to Hempstead to answer for a drug charge.

When Myers was released from the Riverhead facility, he was met by a woman. When the woman saw that Myers was being arrested, she became, as described by Nicosia, "boisterous," and began cursing at the officers. Despite the commotion, the Hempstead Detectives took Myers into their car and advised the woman that Myers was being transported to the Hempstead police armory. Nicosia testified that while in transit, he and Salerno received a phone call from the Nassau County police asking that they instead transport Myers to Nassau County police headquarters for questioning by O'Leary and Cereghino, in connection with the murder of Shelton. Nicosia testified that the first time that he and Salerno were advised of the change in destination from Hempstead to Nassau County was after Myers was placed in their vehicle Myers alleges, on the other hand, that Nicosia and Salerno knew, all along, that they would be delivering Myers to the custody of the Nassau Detectives investigating the Shelton murder. Specifically, Myers alleges that the Hempstead officers conspired with the Nassau County officers to trick him and his family into believing that he was being transported to Hempstead when, in fact, it was always the officers' plan to isolate Myers from his family and transport him, instead, to the custody of the County detectives for questioning in connection with the Shelton murder.

On January 13, 2006, one week after his arrest, Myers was indicted for the Shelton murder. It was the prosecution's position at trial, drawn from the witness statements obtained by Detective O'Leary, that Myer's motive for the shooting was Shelton's gunpoint robbery of Myers that took place at the Flores apartment approximately two hours prior to the murder. All of the witnesses, including Anna Flores, concede that the apartment was a crack location. Perry and the other witnesses referred to Shelton as "Pudge," and to Myers as "Cool Cal." According to the statements, Myers was at the apartment to purchase crack. Pudge came to the door, with a gun. He was angry and threatened Myers with the gun. Shelton grabbed a gold necklace from Myers and fled the apartment. It is alleged that the inhabitants of the apartment learned about the shooting of Shelton the next day.

With the exception of Perry, the witnesses who gave statements to police testified at the murder trial. Anna Flores and Fores testified for the prosecution pursuant to cooperation agreements. Wooden testified as a hostile witness, stating that although he signed a statement corroborating the other witness statements, he told O'Leary that to his knowledge Myers had nothing to do with the Shelton murder. Myers was acquitted of all charges on May 17, 2007.

## C. The Complaint and the Motions

The claims here arise out of allegations with respect to the statements made by the individuals referred to above that led to the arrest and indictment of Myers. It is Myers' position that the statements were procured by Nassau County Police Detectives who threatened the witnesses, and knew that the statements were false. The Nassau County officers are alleged to have acted in conspiracy with the Hempstead officers, in a scheme to procure the statements and to arrest and transport Myers from Riverhead to Nassau County.

Plaintiff alleges claims against all Defendants pursuant to Section 1983 sounding in false arrest and malicious prosecution. Despite the fact of his acquittal, and that no incriminating statements were made by

Myers, he also claims a violation of his Fifth Amendment right against self-incrimination and his Fourteenth Amendment right to a fair trial. These claims are alleged to be supported by the same facts set forth in support of the false arrest and malicious prosecution claims, *i.e.*, the alleged procurement and use of false witness statements at all proceedings against Myers.

The claims against the Hempstead Defendants state only claims of Section 1983 conspiracy. Thus, these defendants are not alleged to have engaged in the individual deprivation of Plaintiffs civil rights, but to have conspired with the other Defendants to engage in such deprivation. The claims against Nassau and Hempstead, the municipal defendants, are alleged only pursuant to state law.

## DISCUSSION

### I. General Legal Principles

#### A. Standards on Summary Judgment

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir.2010). The moving party bears the burden of showing entitlement to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir.2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that par-

ty, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir.2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial' " *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002), quoting, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original).

Importantly, at the summary judgment stage, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984), quoting, *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996), quoting, *Research Automa-*

*tion Corp.*, 585 F.2d at 33. Evidence considered sufficient to defeat summary judgment is generally offered in the form of affidavits or deposition testimony. Such evidence must be based upon the personal knowledge of the witness, must set forth facts admissible in evidence, and the speaker must be shown competent to testify thereto. *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir.2001). Where a plaintiff's case alleges a wrongful motive on the part of a public official, "the trial court must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Jenkins v. City of New York*, 1999 WL 782509 *7 (S.D.N.Y.1999), quoting, *Crawford-El v. Britton*, 523 U.S. 574, 597–98, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Summary judgment "serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Id.* at 600, 118 S.Ct. 1584.

## II. *Legal Principles as to Causes of Action Alleged*

### A. *False Arrest*

▮ The elements of a Section 1983 claim for false arrest are the same as the elements of such a claim under New York state law, and are well established. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir.2007); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). Specifically, a Plaintiff seeking to establish such a claim must show that: (1) defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement and (4) the confinement was not "otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995); *see Southerland v. Garcia*, 2010 WL 5173711 *9 (E.D.N.Y.2010); *Danielak v. City of New York*, 2005 WL 2347095 *6 (E.D.N.Y. 2005), *aff'd, mem.* 209 Fed.Appx. 55 (2d Cir.2006). The final element of the cause of action is negated, and no civil rights claim is stated, if there was probable cause for the arrest. *Jenkins*, 478 F.3d at 84; (probable cause is "complete defense" to claim of false arrest *Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir.2002)) (probable cause is "absolute defense" to claim of false arrest); *Elufe v. Aylward*, 2011 WL 477685 *4 (E.D.N.Y.2011) (same).

▮ Probable cause to arrest exists where an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Caldarola*, 298 F.3d at 162; *Elufe*, 2011 WL 477685 *4; *see, e.g., Singer*, 63 F.3d at 119; *Danielak*, 2005 WL 2347095 at *6. The probable cause determination requires a court to consider the facts available to the officer at the time of, and immediately prior to, the arrest. *Caldarola*, 298 F.3d 156; *Elufe*, 2011 WL 477685 *4. Under both New York and Federal law, probable cause may be determined as a question of law to be decided by the court "when there are no genuine disputes about the facts and proper inferences to be drawn therefrom." *Armatas v. Maroulleti*, 2010 WL 4340437 *6 (E.D.N.Y.2010). Thus, if there are no material facts in dispute "as to the pertinent events and the knowledge of the officers," the determination of probable cause may be determined as a matter of law. *Weyant*, 101 F.3d at 852.

### B. *Malicious Prosecution*

▮ To state a Section 1983 claim sounding in malicious prosecution a plaintiff must prove: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) a favorable termination of the proceedings; (3) lack of probable cause to for commencement of the proceeding and

(4) that the defendant acted with actual malice. *Russell v. Smith*, 68 F.3d 33, 35 (2d Cir.1995); *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir.1997); *Spinks v. Reinstein*, 2007 WL 189472 at \*3 (W.D.N.Y. 2007).

█ In view of the fact that it is ultimately the District Attorney's decision as to whether or not to proceed with a case, the prosecutor's decision to go forward with prosecution will generally cut off the liability of the arresting officers for a claim of malicious prosecution. *Llerando–Phipps v. City of New York*, 390 F.Supp.2d 372, 383 (S.D.N.Y.2005). However, an arresting officer may nonetheless be liable pursuant to a malicious prosecution theory if it can be shown that the officer has knowingly created false information that creates the basis for the prosecution. *See Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir.2003); *Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 130–31 (2d Cir.1997); *Mitchell v. Kugler*, 2009 WL 160798 \*9–10 (E.D.N.Y.2009).

### C. *Fifth Amendment*

█ Plaintiff's Fifth Amendment claims appear to argue that he was deprived of his rights to remain silent and to counsel when he was arrested by the Hempstead Detectives. He also appears to allege a violation of his Fifth Amendment rights pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Fifth Amendment protects against the admissibility of incriminating statements obtained during custodial interrogation of a person who has not properly waived his right to counsel. *Nesbitt v. County of Nassau*, 2006 WL 3511377 \*2 n. 7 (E.D.N.Y.2006); *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The remedy for a violation of this right is exclusion of any self-incriminating statements from use

at a criminal proceeding, and not an action for damages under Section 1983. *Jocks*, 316 F.3d at 138; *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir.1995); *Paige v. City of New York*, 2011 WL 3701923 \*3 (E.D.N.Y.2011); *McZorn v. Endicott Police Dept.*, 2008 WL 163581 \*9 (N.D.N.Y. 2008).

█ With respect to *Brady*, such a claim requires a showing that exculpatory or impeachment evidence was suppressed by the prosecution, and that there is a reasonable probability that the suppressed evidence, had it been presented at trial, would have produced a different verdict. *Burt v. Aleman*, 2008 WL 1927371 (E.D.N.Y.2008). Police officers satisfy their *Brady* obligations by turning over evidence to the prosecutor, not to the defendant. *Id. See Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir.1992). Even in such a case, a Section 1983 claim is stated where a plaintiff can demonstrate that police have turned over fabricated evidence to the prosecutor. Such conduct can be redressed, not as a *Brady* violation, but because it violates the right to not to be deprived of liberty on the basis of false and fabricated evidence. *Ricciuti*, 124 F.3d at 130; *Nibbs v. City of New York*, 800 F.Supp.2d 574, 576, 2011 WL 3444326 \*2 (S.D.N.Y.2011). Thus, as described above in the context of the malicious prosecution cause of action, a Section 1983 claim is stated, *inter, alia*, if plaintiff can show that the police fabricated a false confession that was forwarded to prosecutors. *Ricciuti*, 124 F.3d at 129,

### D. *Conspiracy*

█ A claim of a Section 1983 conspiracy must be supported by more than conclusory allegations. *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir.1993); *Polur v. Raffe*, 912 F.2d 52 (2d Cir.1990); *see also Fariello v. Rodriguez*, 148 F.R.D. 670, 677

(E.D.N.Y.1993), *aff'd.,* 22 F.3d 1090 (2d Cir.1994). Specifically, a plaintiff must allege "with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Elmasri v. England,* 111 F.Supp.2d 212, 218 (E.D.N.Y.2000), quoting, *Fariello,* 148 F.R.D. at 677. Failure to allege any facts in support of a conspiracy claim results in dismissal. *See id.* at 221–22.

## III. *Disposition of the Motions*

### A. *Fifth Amendment*

The court addresses first Plaintiff's Fifth Amendment claim alleging a *Brady/Miranda* violation. As to any *Brady* claim, there is no allegation that Defendants withheld exculpatory evidence. Therefore, to the extent that Plaintiff attempts to state a Fifth Amendment claim under *Brady,* he sets forth no facts supporting any such theory. As to any *Miranda* claim, such violations are, as noted above, properly redressed by the exclusion of improperly obtained evidence at trial; and not by way of an action pursuant to Section 1983. Accordingly, and because there is no evidence that Myers made statements in violation of his Fifth Amendment rights that were ever used in any proceeding, any Fifth Amendment claims based upon a *Miranda* violation are dismissed.

### B. *Disposition of Remaining Claims*

All of the claims that remain are based upon the same factual allegations. Specifically, Plaintiff's claims of false arrest, malicious prosecution, unfair trial, and conspiracy are all grounded on an alleged lack of probable cause to arrest and prosecute Myers, as well as claims of bad faith. All causes of action are based upon factual allegations surrounding the taking of witness statements, and the 2006 arrest of Myers at the Riverhead facility. Specifically, Plaintiff alleges that Defendants knowingly obtained false witness statements, and conspired to implicate Myers in the Shelton murder. Myers further claims the existence of a conspiracy to arrest him and mislead his family as to his whereabouts allowing the police to further their goal of falsely arresting and prosecuting Myers.

Plaintiff's bare allegations of a scheme to fabricate evidence might be sufficient to defeat a motion to dismiss. Where, as here, however, a plaintiff is faced with a properly supported motion for summary judgment, he may not rest upon his pleadings. Instead, he must come forward with admissible evidence that would allow a reasonable jury to find in his favor. The mere showing that a criminal jury may have chosen not to believe all of the prosecution witnesses is insufficient to defeat summary judgment. Instead, the ability to withstand summary judgment rises or falls on the question of whether Myers has come forward with evidence sufficient to sustain his claims at this point. The court holds that he has not.

In opposition to the motions, Myers relies, not on evidence developed or testimony taken during the course of discovery in this lawsuit, (either by affidavit or deposition), but only on documents and testimony from his murder trial. He alleges that these documents show that he was intentionally set up by law enforcement for the Shelton murder. Importantly, however, no witness has come forward, other than Myers, to support the claim that the Defendants in this case acted to knowingly procure false testimony implicating Myers in the Shelton murder.[1] Instead, Myers

---

**1.** Myers cannot testify as to any personal

knowledge as to the police procurement of

relies on the unsavory nature of the witnesses who provided statements to police and testified at his criminal trial.

The trial testimony relied upon by Myers to show fraudulently procured testimony was elicited upon the skillful cross-examination of the prosecution witnesses by defense counsel. When conducting that examination, defense counsel pointed out the witnesses' criminal histories. He drew the jury's attention to the possibility that all those present at the Flores apartment on the night of the murder were high on crack. Counsel attacked witness credibility based upon these factors, and the fact that cooperation agreements and reduced sentences were either obtained, or were imminent. While the testimony elicited via cross-examination may have been sufficient to support the criminal jury's verdict that the State did not prove its case beyond a reasonable doubt, it is not enough to defeat summary judgment. *See Fudge v. Town of Shandaken Police*, 2010 WL 3258385 *7 (N.D.N.Y.2010) (reward for testimony does not, standing alone, suggest falsity of statement); *Daniels v. D'Aurizo*, 564 F.Supp.2d 194, 198 (W.D.N.Y.2008) (fact that witness was offered a reduced charge in exchange for testimony insufficient to show that witness was "asked or induced to be untruthful").

Importantly, no witness at the criminal trial testified that they were threatened into giving testimony which the Defendant police officers knew to be false. No one stated that Myers was, as he suggested, "framed." While Wooden recanted his original statement to police, he stated only that the words in his signed statement were those of the Detective. Wooden could not contradict the fact that he signed his statement. His position at trial that he had no knowledge of Myers committing a crime can be characterized only as recanting earlier testimony and does not, standing alone, support a claim of fabrication of evidence to frame Myers. This is especially true in light of the fact that all of the other witnesses who testified at the Myers trial stood by their statements. Thus, despite strong cross-examination by defense counsel, Flores stood firm, stating clearly that, "[t]here was no deal, I'm telling you I had a deal to tell the truth. That's the only deal I had with [the prosecutor]. What happened in that day in my apartment, that was the only truth that I know. There was no deal." As to Fore, he stated only that in exchange for his testimony, he was to be allowed to plead to a misdemeanor, and would be entitled to a sentence of time served. The mere fact that a witness was offered a reward for giving a statement does not show the falsity of the statement, or negate probable cause. *Daniels*, 564 F.Supp.2d at 198.

 The court has carefully reviewed of all of the documents submitted in connection with this motion, including the depositions, state court trial testimony, and documents used in that proceeding. That review reveals that in this case, as in the vast majority of criminal prosecutions, law enforcement officers worked with cooperating witnesses of less than stellar moral character. This is the norm, and not the exception. It was only through the cooperation of these individuals that police, and the prosecution, were able to construct their case against Myers. As in all criminal cases, it was for the jury to determine witness credibility. Clearly, that credibility was influenced by witnesses' backgrounds, including prior convictions and years of drug use. Criminal juries are free to accept or reject the evidence offered by the prosecution, and to find that reasonable doubt requires acquittal.

statements.

**370**

■ The acquittal of a criminal defendant, however does not dictate a finding of police misconduct, or even a denial of summary judgment where, as here, plaintiff alleges a broad conspiracy of such misconduct. *See Carlisle v. City of New York*, 2007 WL 998729 *3 (S.D.N.Y.2007) ("acquittal is evidence of reasonable doubt, not lack of probable cause"). More is required to allow such a case to proceed pass the summary judgment stage. Importantly, no witness has come forward in the context of this proceeding to support the single factual claim underlying all of Plaintiff's causes of action, *i.e.*, that police acted to knowingly to frame Myers for the Shelton murder. Despite the volume of documents submitted in connection with this motion, Plaintiff has submitted nothing more than his bare allegations, coupled with his acquittal and the questionable moral character of the State's witnesses. In the absence of admissible evidence to contradict the Defendants' showing of entitlement to summary judgment, Plaintiff's opposition is insufficient. The motions for summary judgment dismissing Plaintiff's claims are therefore granted. *Accord McGuire v. Village of Tarrytown*, 2011 WL 2623466 *5 (S.D.N.Y.2011) (speculation that police acted only in solidarity to fellow officers and not pursuant to probable cause insufficient to defeat summary judgment); *Mitchell*, 2009 WL 160798 *10 (E.D.N.Y.2009) (noting that grand jury minutes and trial testimony can dispel claim that police misconduct supported malicious prosecution claim).

In view of the fact that Plaintiff is unable to defeat summary judgment with respect to his claims of police misconduct in obtaining statements, the court must also dismiss all claims alleging a conspiracy to obtain such statements. *See Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir.2001); *Mitchell v. County of Nassau*, 786 F.Supp.2d 545, 563–64 (E.D.N.Y.2011).

Finally, the foregoing dismissals finding no inappropriate behavior on behalf of any of the named officers dictate the dismissal of any state law claims against the municipal defendants based upon a theory of respondeat superior.

*CONCLUSION*

For the reasons set forth above, the court grants all motions for summary judgment. The Clerk of the Court is directed to terminate those motions and to close the file in this case.

SO ORDERED.