**16-1715-cv**
*Dufort v. City of New York, et al.*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2016

ARGUED: MAY 3, 2017
DECIDED: OCTOBER 27, 2017

No. 16-1715-cv

RYAN DUFORT,
*Plaintiff-Appellant,*

*v.*

CITY OF NEW YORK, JOSEPH MAROTTA, JAE SHIM, THOMAS CONFORTI,
WILLIAM SCHMITTGALL, and JOHN and JANE DOES 1 through 10,
*Defendants-Appellees,*

RICHARD A. BROWN, PATRICK O'CONNOR, and MICHAEL VOZZO,
*Defendants.*[1]

————

Appeal from the United States District Court
for the Eastern District of New York.
No. 12 Civ. 2283 – Steven M. Gold, *Magistrate Judge*.

————

---

[1] The clerk of court is directed to amend the opinion to match the caption above.

Before: WALKER, LIVINGSTON, and LYNCH, *Circuit Judges*.

_____

Plaintiff-appellant Ryan Dufort appeals from a memorandum and order of the United States District Court for the Eastern District of New York (Steven M. Gold, *M.J.*) granting summary judgment to the defendants, the City of New York and New York City police officers Joseph Marotta, Jae Shim, Thomas Conforti, and William Schmittgall (collectively, "Defendants"), on Dufort's claims under 42 U.S.C. § 1983 and the Fourth and Fifth Amendments for false arrest, malicious prosecution, and violation of due process. Dufort was arrested and charged in connection with a 2006 bar brawl that left one victim dead and another severely injured, but was ultimately acquitted by a jury of any criminal wrongdoing.

The district court concluded that (1) Dufort's false arrest claims failed because his arrest was supported by probable cause; (2) his malicious prosecution claims failed, both because his prosecution was supported by probable cause, and the chain of causation between the arrest and the ultimate prosecution was broken by the District Attorney's decision to pursue charges and the grand jury's decision to issue an indictment; and (3) his due process claims, which were premised on Dufort's assertion that the Defendants intentionally suppressed or distorted exculpatory evidence at trial,

failed as a matter of law because the allegedly suppressed evidence was elicited at trial.

We conclude that the district court's grant of summary judgment as to Dufort's false arrest and malicious prosecution claims was premature, because disputed questions of material fact remain regarding key aspects of the criminal investigation and subsequent prosecution. We further conclude that those same questions of material fact preclude a grant of qualified immunity at the summary judgment stage. We agree with the district court, however, that Dufort's due process claims fail as a matter of law. We therefore AFFIRM in part and VACATE and REMAND in part the judgment of the district court.

————

KAYLA C. BENSING (Edwin G. Schallert, *on the brief*), Debevoise & Plimpton LLP, New York, NY, *for Plaintiff-Appellant*.

KATHY C. PARK, Assistant Corporation Counsel (Fay Ng, *on the brief*) *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff-appellant Ryan Dufort appeals from a memorandum and order of the United States District Court for the Eastern District

of New York (Steven M. Gold, *M.J.*)[2] granting summary judgment to the defendants, the City of New York and New York City police officers Joseph Marotta, Jae Shim, Thomas Conforti, and William Schmittgall (collectively, "Defendants"), on Dufort's claims under 42 U.S.C. § 1983 and the Fourth and Fifth Amendments for false arrest, malicious prosecution, and violation of due process. Dufort was arrested and charged in connection with a 2006 bar brawl that left one victim dead and another severely injured, but was ultimately acquitted by a jury of any criminal wrongdoing.

The district court concluded that (1) Dufort's false arrest claims failed because his arrest was supported by probable cause; (2) his malicious prosecution claims failed, both because his prosecution was supported by probable cause, and the chain of causation between the arrest and the ultimate prosecution was broken by the District Attorney's decision to pursue charges and the grand jury's decision to issue an indictment; and (3) his due process claims, which were premised on Dufort's assertion that the Defendants intentionally suppressed or distorted exculpatory evidence at trial, failed as a matter of law because the allegedly suppressed evidence was elicited at trial.

---

[2] The parties consented to have the summary judgment motion adjudicated by a magistrate judge.

We conclude that the district court's grant of summary judgment as to Dufort's false arrest and malicious prosecution claims was premature, because disputed questions of material fact remain regarding key aspects of the criminal investigation and subsequent prosecution. We further conclude that those same questions of material fact preclude a grant of qualified immunity at the summary judgment stage. We agree with the district court, however, that Dufort's due process claims fail as a matter of law. We therefore AFFIRM in part and VACATE and REMAND in part the judgment of the district court.

## BACKGROUND

Dufort's suit stems from his arrest and prosecution in New York state court on charges of murder in the second degree and manslaughter in the first degree that resulted in his acquittal by a jury. On this appeal, we take the facts, most of which are not in dispute, in the light most favorable to the plaintiff. *See Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir. 1991).

**I.     The Attack**

The story of this case began when, on October 7, 2006, Dufort and four friends—Christopher Baez, Sebastian Yoon, Jeffrey Shih, and John Bae—went to the Pastel Karaoke bar in Queens, New York. Dufort, who was fifteen years old at the time, was wearing a

maroon, zip-up, hooded sweatshirt with a white "American Eagle" logo on it. Earlier in the evening, Dufort and his four companions had gone to a nearby construction site to gather pieces of pipe in order to defend themselves "just in case" an altercation occurred. Surveillance video shows Dufort entering Pastel Karaoke shortly after midnight with a one-and-a-half-foot pipe concealed in his sweatshirt. When they arrived at the club, the five friends met up with a larger group of about twenty students from Bayside High School, some of whom were affiliated with a local gang known as the "Ghost Shadows." This group spent most of the night in some of the club's private karaoke rooms.

At approximately 3:00 AM on the morning of October 8, a separate group of teenagers—Jung Hwa Lee, Hwa Young Park, Mink-ki Shin, and In Hee Yoo—arrived at Pastel Karaoke. At 3:50 AM, as this group attempted to leave, Lee and Shin were attacked in the central area of the bar. During the altercation, Sebastian Yoon entered a private room occupied by Dufort and his friends and informed them that a fight had broken out. Some of Dufort's friends ran out to participate in the fight. Dufort also left the private room when the fight began, and surveillance footage shows him walking down a corridor holding his length of pipe. There is no surveillance footage, however, of the attack itself. Dufort claims that when he entered the bar area he witnessed a group of ten to twenty men

assaulting the victims, and that he stepped over either Lee or Shin, who was lying on the ground, in order to leave the bar. Dufort maintains that he never participated in the fight, and that he never used physical force against either victim. Surveillance footage shows Dufort leaving the bar with a group of other young men, some of whom were holding bats. One other young man in a red, button-down shirt, who is holding a bat, is seen leaving the building moments after Dufort.

## II.    The Criminal Investigation

Lee and Shin were rushed to Flushing Hospital, where Lee was pronounced dead. Shin survived, but sustained a severe head injury that required nine staples to close. Hwa Young Park, who had witnessed part of the attack, accompanied the victims to the hospital, and was interviewed there by police at approximately 5:30 AM. Park then accompanied the police to the 109th Precinct, where she spoke with Detectives Joseph Marotta and Jae Shim. At the police station, Detective Marotta showed Park surveillance video and still images from the bar and asked her if she could identify various individuals appearing in the footage, including Dufort, as Lee and Shin's assailants. Park replied that one of the attackers, whom she had only seen from behind, was wearing a red shirt that was similar in color to Dufort's sweatshirt. However, she stated that

she did not recognize Dufort's face, or any other distinguishing characteristics, and that she could not see whether the jacket had any logo or other insignia on it. She could only confirm that she had seen a person wearing a similar colored shirt participate in the attack, and that she had only seen this person from behind. In a deviation from normal police procedure, Detectives Marotta and Shim did not contemporaneously document Park's statements to them in a "Complaint—Follow Up Informational Report," or "DD5" form.

Two other individuals who had been at Pastel Karaoke that night—David Han and Eric Kim—were also questioned by Marotta. Both confirmed that Dufort could be seen in the surveillance footage, but neither had seen him participate in the brawl. *Id.* At some point after the attack, police also spoke with one of Dufort's friends, Tom Yoon, who stated that Dufort had previously claimed to be a member of the "Ghost Shadows" gang, and that he had tried to recruit Yoon.

Three days after the attack, on October 11, 2006, police arrested[3] Dufort and brought him to the precinct, where Detectives Marotta and William Schmittgall interviewed him in the presence of

---

[3] Defendants' brief suggests that there may be some question about whether the arrest about which Dufort complains occurred on October 11 or later in the investigation. *See* Appellees' Br. at 28–29. Dufort assumes that October 11 is the relevant date, and, drawing all reasonable inferences in his favor, there is no indication that he was not formally taken into custody at that time.

his parents. Dufort told the detectives that he had been at Pastel Karaoke the night of the attack, but that he did not participate in the brawl. Later that evening, the detectives had Dufort participate in a lineup. During the lineup, Dufort was wearing a maroon sweatshirt that was similar or identical to the one he had worn on the night of the attack. No other participant in the lineup was wearing a red shirt. Park and five other witnesses were asked if they could identify Dufort as one of the assailants. Park was the only witness to identify Dufort as a person involved in the attack. At trial, Park admitted that her identification of Dufort at the lineup was based solely on the fact that Dufort was wearing a sweatshirt similar in color to the shirt or jacket worn by one of Lee and Shin's attackers.[4] Dufort's attorney, William F. Mackey, Jr., who accompanied him to the lineup, submitted an affidavit stating, among other things, that, while they were at the precinct, an unidentified detective told him that the police knew Dufort was not involved in the attack but wanted him to be a witness against other individuals who were involved.

---

[4] Park testified at a 2014 deposition that she was able to distinguish another red-shirted man, shown on the surveillance video leaving the bar shortly after Dufort, from the assailant because that man had "spiky hair" (which Dufort did not). As we discuss below, there are reasons to doubt the reliability of that assertion; in any event, there is no indication in the record that Park made any claim that she could distinguish Dufort from others wearing similar clothing at the time of her lineup identification.

Based on the surveillance video from Pastel Karaoke, and Park's identification of Dufort's jacket, on October 13, 2006, Detective Marotta swore to a criminal complaint charging Dufort with second-degree murder, first-degree manslaughter, first-degree gang assault, and second-degree assault.

### III.    The Criminal Prosecution

In early 2007, Assistant District Attorneys Andrea Eckhardt and Michael Vozzo presented evidence to a grand jury seeking the indictment of Dufort and six other defendants in connection with the attack on Lee and Shin. Park's lineup identification was the only grand jury evidence directly identifying Dufort as one of the assailants. Both Park and Detective Marotta, who also testified regarding the lineup, indicated to the grand jury that Park had identified Dufort as an assailant. Neither revealed to the grand jury that the identification was based only on the color of his sweatshirt nor that at least one other male seen leaving Pastel Karaoke shortly after the attack wore a similarly colored shirt.[5] The parties have

---

[5] The entirety of Detective Marotta's grand jury testimony as to Dufort is as follows:

> Q. [By ADA Eckhardt] . . . Turning your attention first to the date of October 12th of 2006, at approximately 6:45pm, at the 109 Precinct. Did you have occasion to conduct a lineup on that date?
> A. Yes, we conducted two lineups, yes.
> Q. Turning your attention to the first lineup you conducted at eighteen forty-five hours. Was that the lineup of Ryan Dufort?

introduced conflicting evidence regarding whether ADAs Eckhardt and Vozzo were aware that Park's identification was based soley on the color of Dufort's clothing before they initiated the prosecution against him. Jonathan Putt, another person who was present at Pastel Kareoke on the night of the attack, provided testimony to the grand jury placing Dufort on the scene with a pipe. Specifically, Putt testified that he was in a private room with Dufort and others when Sebastian Yoon entered the room and announced that a fight had broken out; that Dufort had followed the others to the site of the

---

A.  I believe it was.
Q.  And did that lineup consist of six individuals holding numbers?
A.  Yes.
Q.  And was that lineup viewed by Miss Park?
A.  Yes.
Q.  Can you tell us what position Ryan Dufort occupied in the lineup at the time it was viewed by Miss Park?
A.  I, I don't have the position.
Q.  Would your lineup sheet refresh your recollection?
A.  Yes.
Q. Please tell us what position he was in the lineup as it was viewed by Miss Park?
A.  Position Number 3.
Q.  Is Ryan Dufort one of the subjects of this Grand Jury investigation?
A.  Yes, he is.

Park's entire grand jury testimony as to Dufort is as follows:

Q. [By ADA Eckhardt]. . . Did there come a time on October 12 of 2006, at approximately 6:45pm that you went to the 109 Precinct to view a line-up?
A.  Yes.
Q.  Did that lineup consist of six people holding numbers?
A.  Yes.
Q.  Did you recognize anyone from that line-up?
A.  Yes.
Q.  What number did you recognize?
A.  I chose number 3.
Q.  What did you recognize number 3 as having done during the incident you just described?
A.  He was jumping on both victims.

fight, taking a pipe with him; and that when John Bae stated that he had hit one of the victims and that the pipes were "really good" because they did not bend, Dufort expressed his agreement.

Months later, on November 28, 2007, one of Dufort's co-defendants, Sebastian Yoon, pleaded guilty to manslaughter in exchange for an agreement to provide testimony against the remaining defendants. At his plea allocution, Yoon implicated other assailants in the attack, but when he did not mention Dufort, ADA Eckhardt asked him whether Dufort had participated in the brawl. Yoon replied, "I think he punched."

Dufort spent nearly five years incarcerated at Rikers Island Prison Complex in New York City awaiting trial.[6] In May of 2011, Dufort, along with Bae, Baez, and two others, was tried for the attack on Lee and Shin. Park testified at trial. She could not identify Dufort in the courtroom. After the prosecutor showed Park the surveillance video, she testified that she recognized Dufort in the video, but that she recognized him by his clothing, rather than by his

---

[6] We hope that shockingly long pretrial detentions like this will one soon be a thing of the past. The recent report of the independent commission that recommended closing Rikers Island gives us reason for optimism. *See* INDEP. COMM'N ON N.Y.C. CRIMINAL JUSTICE & INCARCERATION REFORM, A MORE JUST NEW YORK CITY (2017), https://static1.squarespace.com/static/577d72ee2e69cfa9dd2b7a5e/t/595d48 d1e6f2e1e5bcaa411a/1499285717652/Lippman+Commission+Report+FINA L+Singles.pdf.

face. The jury returned guilty verdicts for Dufort's four co-defendants and acquitted Dufort of all charges.

## IV.   The Present Civil Suit

On May 8, 2012, Dufort brought the present action against the City of New York and Detectives Marotta, Shim, and Schmittgall, as well as Detective Thomas Conforti and several other police officers. Dufort also initially named several prosecutors as defendants, but he abandoned those claims during the course of the proceedings. He also substantially narrowed his claims against the remaining defendants.

On April 10, 2015, the Defendants moved for summary judgment on Dufort's remaining claims. These included claims under 42 U.S.C. § 1983 against the individual defendants for false arrest, malicious prosecution, and denial of due process, as well as a state law claim against the City of New York asserting a state law malicious prosecution claim premised on a theory of *respondeat superior* liability. On April 28, 2016, the district court granted the Defendants' motion for summary judgment as to all of Dufort's remaining claims, holding that there was no genuine dispute of material fact regarding whether Dufort's arrest and subsequent prosecution were supported by probable cause. The district court also justified granting summary judgment on Dufort's malicious

prosecution claim on the independent ground that Dufort could not show that the defendant police officers "caused" his prosecution, because the District Attorney's decision to prosecute and the grand jury's indictment interrupted the chain of causation between the allegedly wrongful arrest and trial. The district court granted summary judgment on Dufort's due process claim, because Dufort had not proved that the evidentiary record at his criminal trial was unfairly distorted.

Dufort now timely appeals.


**DISCUSSION**

A district court's grant of summary judgment is reviewed *de novo*. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). On a motion for summary judgment, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). Summary judgment is appropriate only if the pleadings, the discovery and the disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All legal conclusions by a district court

are reviewed *de novo. United States v. Livecchi*, 711 F.3d 345, 351 (2d Cir. 2013) (per curiam).

On appeal, Dufort argues that the district court erred in granting summary judgment to the Defendants because, (1) neither his arrest nor his prosecution was supported by probable cause; (2) neither the the ADA's independent decision to pursue charges nor the grand jury indictment broke the chain of causation between his unlawful arrest and the subsequent prosecution; and (3) the Defendants denied Dufort due process by fabricating inculpatory evidence through an inappropriately suggestive lineup. The Defendants argue that summary judgment was appropriate on all counts and further argue that, in any event, they are entitled to qualified immunity because their arrest of Dufort and their subsequent role in his criminal prosecution were justified by arguable probable cause.

We find that key questions of material fact regarding Dufort's false arrest and malicious prosecution claims remain in dispute, and therefore remand those claims for further proceedings. We agree with the Defendants, however, that Dufort's due process claims fail as a matter of law, and therefore affirm the district court's grant of summary judgment as to those claims.

**I.      False Arrest Claim**

In order to sustain a claim for false arrest under 42 U.S.C. § 1983 and New York law, a plaintiff must show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). "Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). The district court found that the Defendants' arrest of Dufort three days after the attack on Lee and Shin was supported by probable cause, and that as a result Dufort's claim for false arrest fails as a matter of law. We belive there are genuine issues of material fact that should have precluded summary judgment on this point.

Generally, "probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. Probable cause is a mixed question of law and fact. *See, e.g., United States v. Singletary*, 798 F.3d 55, 59 (2d Cir. 2015). Questions of historical fact regarding the officers' knowledge at the time of arrest are to be resolved by the jury. *See Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004).

However, "where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

Probable cause is "a fluid concept . . . not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 156 (alteration in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). Although probable cause requires more than "mere suspicion" of wrongdoing, it focuses on "probabilities," not "hard certainties." *Id.* (quoting *Gates*, 462 U.S. at 231). Ultimately, whether probable cause exists "depends on the totality of the circumstances" of each case, and is not susceptible to "precise definition or quantification into percentages." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Id*. (alteration omitted) (internal quotation marks omitted) (quoting *Gates*, 462 U.S. at 235). However, a determination of probable cause is not lacking in substance: it must be justified by a "belief of guilt" that is "particularized with respect to the person to be searched or seized." *Id*. (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).

As a preliminary matter, we can conclude that the lineup in which Park "identified" Dufort (and which was the cornerstone of

the state's case against him) should not factor into any probable cause analysis. An identification cannot be used to support probable cause if the "identification procedure was 'so defective that probable cause could not reasonably be based upon it.'" *Stansbury v. Wertman*, 721 F.3d 84, 91 n.7 (quoting *Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007)). Park's lineup identification of Dufort resulted from a paradigmatic example of an improperly suggestive lineup. Park stated to officers that she did not recognize Dufort's face, and that she could only recognize the color of his sweatshirt as similar to that of one of the assailants. Police then placed Dufort in a lineup in which he was the only suspect wearing clothing resembling a red shirt. Park picked Dufort out, again stressing that she recognized only his clothing.

This cannot be construed as an "identification" of Dufort for the purposes of probable cause. We have made clear that a lineup in which the suspect is the only individual "wearing distinctive clothing or otherwise matching important elements of the description provided by the victim . . . substantially increases[es] the danges of misidentification." *Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001) (quoting *Israel v. Odom*, 521 F.2d 1370, 1374 (7th Cir. 1975)). At most, Park confirmed a statement she had already given police several times: that Dufort's jacket was similar in color to a jacket or shirt worn by one of the assailants. This statement could be

given some weight in a probable cause analysis, albeit limited weight, given the presence of one or more other people at Pastel Karaoke who were similarly clothed. Its repetition during the lineup, however, given the surrounding circumstances, could provide no evidence that the assailant was in fact Dufort.

The question before us, then, is whether the undisputed evidence presented by the Defendants other than Park's lineup "identification" was sufficient to establish probable cause to arrest as a matter of law. We hold that it was not. A reasonable jury could easily find that, apart from her "identification" at the suggestive lineup, Park never identified Dufort before or after the lineup as one of the assailants in either the investigation or the ensuing prosecution. To the contrary, she appears to have explicitly told police prior to Dufort's arrest that she recognized him only by the color of the jacket worn by one of the assailants, and that she could not positively distinguish between him and another patron wearing a shirt of a similar color. As Dufort has pointed out, the Defendants' unusual decision to depart from normal practice and not contemporaneously document their initial interview with Park in a "DD5" form raises considerable doubt about the exact nature of her initial identification—doubt which, at the summary judgment stage, must be construed in Dufort's favor. *See, e.g.*, *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).

Park reiterated her jacket-color-only identification at several points throughout the original criminal trial and this civil litigation. In her 2014 deposition testimony, she stated that she recognized Dufort as one of the assailants by "the color of his clothing," but also recalled having seen "at least two" people in Pastel Karaoke that night wearing shirts or jackets with the same maroon color as Dufort's sweatshirt. Upon further questioning, Park admitted, "I don't know which person I saw exactly," but that "one who were [sic] wearing those kind of color [sic] was [j]umping and stomping Jung Hwa Lee." Likewise, in the criminal trial, when she was asked whether she could identify Dufort, she replied, "[n]ot face but clothing."

The Defendants point out that Park testified at her deposition in this case that the other person she had seen wearing a red shirt was distinguishable from Dufort because the other patron had "spiky hair, very short hair." But there is no evidence that Park made this statement before February 28, 2014—seven years after the attack, and after Dufort had already been prosecuted and acquitted of all charges. A reasonable jury could therefore find that the statement had no bearing on whether probable cause existed to arrest Dufort in 2006 or to bring criminal charges against him in 2007, because it sheds no light on what the Defendants knew or reasonably believed when they were conducting the underlying

criminal investigation. The Defendants have not cited any record evidence to suggest that Park was able to distinguish between the various suspects seen wearing red shirts *prior* to the criminal trial. Moreover, Park's statement regarding the suspects' different hairstyles is at odds with other statements in her civil deposition, in which she repeats her position that she could not recognize Dufort as one of the assailants, and only recognized the color of his jacket. At most, Park's deposition testimony indicates that the nature of her identification of Dufort and her reliability as a witness are disputed questions of material fact which should be resolved by a jury at trial, not by a court at summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [when] he is ruling on a motion for summary judgment . . . .").

Setting aside the inconclusive identification by Park, who was the police and prosecution's sole identification witness against Dufort, the Defendants' remaining evidence is too gossamer to support the conclusion that, as a matter of law, there was probable cause to arrest. There was no video of the attack on Lee and Shin; none of the five eyewitnesses other than Park who were questioned were able to identify Dufort as an assailant; and no forensic evidence tying Dufort to the attack was ever produced. Ultimately, the most

that the record on summary judgment establishes is that Dufort had come to Pastel Karaoke on October 8, 2006 with many others, some of whom who later participated in the attack on Lee and Shin; that he, like others, brought a pipe to the bar "just in case" a fight occurred; that he was one of at least two patrons who wore a shirt similar in color to that worn by one of the assailants; that he was in the vicinity of the fight when it occurred; and that he at one time commented to a friend that he was in a gang called the "Ghost Shadows."

It is well settled that probable cause requires more than suspicions, even reasonable ones. *See, e.g.*, *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Police do not have particularized probable cause to make an arrest simply because a suspect has suspicious acquaintances, or happens to be at the scene of a crime—particularly when, as here, the crime occurs in a crowded public place. *Cf. Ybarra*, 444 U.S. at 91. ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."). Thus, in *Ybarra v. Illinois*, 444 U.S. 85 (1979), the Supreme Court held that police did not have probable cause to search patrons of a bar for heroin merely because they had reliable information that the bartender used the establishment to sell narcotics to customers. *Id*. Instead, the Court held that "[w]here the standard is probable cause,

a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Id.*; *see also Pringle*, 540 U.S. at 371.

Viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find that the police arrested Dufort based on little more than a witness's statement that he wore a similar shirt to that of one of Lee and Shin's attackers. Although a jury could also interpret the evidence differently, the record presents genuine issues of material fact that preclude the conclusion that there was probable cause as a matter of law and that, instead, require a trial on the merits.

## II.    Malicious Prosecution

In the absence of federal common law, the merits of a claim for malicious prosecution under § 1983 are governed by state law. *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989). In New York, the four essential elements of a malicious prosecution claim are: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice*." Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000) (internal citations and quotation marks omitted).

The district court based its grant of summary judgment on Dufort's malicious prosecution claims on the grounds that (1) Dufort's prosecution was justified by the same probable cause as his arrest, and that probable cause grew stronger in subsequent months by the discovery of new evidence; and (2) in any event, the decisions of ADAs Eckhart and Vozzo to pursue charges and of the grand jury to indict Dufort relieve the Defendants of any liability. We find that key questions of material fact regarding Dufort's malicious prosecution claims remain in dispute, and therefore remand those claims for further proceedings.

**A. Probable Cause**

The "existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). The fluid nature of probable cause remains the same at both the arrest and prosecution stage. To begin with, as noted above, the record on summary judgment does not establish as a matter of law that the Defendants had probable cause to arrest Dufort. By the same token, the evidence in that record, without more, is not sufficient to establish probable cause for the filing of criminal charges or the commencement of a prosecution.

The Defendants claim, and the district court held, that additional evidence came to light before trial that justified Dufort's

prosecution, even if it could not have been sustained solely based on the evidence available at the time of his arrest. But the two pieces of new evidence they identified are insufficient to support a grant of summary judgment, whether considered in isolation or together. One was the testimony of another suspect in the fight, Jonathan Putt. But Putt only testified that Dufort brought a pipe to Pastel Karaoke, and that he was in a private karaoke room when the brawl began— facts already established by the surveillance footage and not contested by Dufort. Putt admitted at trial that he did not know where Dufort was during the attack, and did not see him participate. As discussed previously, the mere fact that Dufort was at Pastel Karaoke on the night of the attack, or in the company of other assailants, is not sufficient to establish probable cause for a criminal prosecution.

The second piece of additional evidence the Defendants point to is the testimony of assailant Sebastian Yoon. Yoon, facing a maximum sentence of fifty years to life in prison, agreed to cooperate, pled guilty to manslaughter, and implicated the other defendants in exchange for a reduced sentence. When the prosecutor prompted Yoon to comment on Dufort's participation in the brawl, his only reply was, "I think he punched." App'x at 250. This flimsy testimony as to what a cooperator "thinks" is by itself not sufficient to permit the district court to grant summary judgment on Dufort's

malicious prosecution claims. When the existence of probable cause is a question of law, the determination must be made on the basis of undisputed facts. *See Walczyk*, 496 F.3d at 157. Yoon's weak statement, made under considerable pressure, was the only genuinely new evidence introduced to supplement the prosecution's case after Dufort's arrest. The dispositive question is whether this testimony was sufficiently compelling that reasonable law enforcement officers could have relied on it to find probable cause to pursue charges against Dufort, notwithstanding the other evidentiary gaps in the state's case. This question can only be resolved by evaluating the credibility and probative weight of Yoon's account, and that assessment can only be made by a jury. *See Anderson*, 477 U.S. at 255.

**B. The District Attorney's Prosecution and Grand Jury Indictment**

We now turn to the Defendants' argument that the District Attorney's decision to prosecute Dufort or the grand jury's decision to indict insulates them from liability.

As a preliminary matter, the district court granted summary judgment in this case without permitting Dufort to depose the prosecutors who tried him, and thus the record on the extent of their knowledge is incomplete. Park testified in her deposition in this case

that she told the police and the prosecutor at some time in October 2006 that her lineup identification was based solely on Dufort's clothing. Nonetheless, Dufort has submitted an affidavit from his criminal defense attorney, William Mackey, testifying that, at the time of the lineup, he never heard Park disclose to representatives from the District Attorney's office that she only recognized Dufort by the color of his clothing. Dufort has also introduced testimony from his trial attorney, Christopher Renfroe, stating that Detective Marotta did not mention the limited nature of Park's identification during a pre-trial hearing in which Dufort sought to suppress that identification. Defendants have produced no evidence demonstrating conclusively that the District Attorney's office was aware of the limited nature of Park's identification. The district court noted that Park stated for the first time in her 2014 civil deposition (long after Dufort's acquittal) that she had told an ADA that she had identified only Dufort's clothes. However, as Dufort points out, Park's recollection of her cooperation with the police and prosecutors has been incomplete, and sometimes inconsistent.

Whether Park ever told prosecutors prior to trial that she could only recognize Dufort by the color of his jacket is a disputed question of fact, and must be evaluated by a jury. If the District Attorney's office pursued its prosecution against Dufort after it was deliberately misled by the Defendants, then the decision to

prosecute does not interrupt the chain of causation. *Cf. Bermudez v. City of New York*, 790 F.3d 368, 374–76 (2d Cir. 2015) (holding that an ADA's decision to prosecute a suspect did not constitute an intervening cause that shielded the arresting officers from liability if the ADA was "not informed of the alleged problems with the evidence") Dufort has raised a triable issue of fact as to whether either the grand jury's indictment or the prosecutors' participation in his case constituted intervening causes that insulate the Defendants from liability.

The record in this case presents a question of fact as to whether the District Attorney's office was aware of the limited nature of Park's identification testimony. "[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino*, 331 F.3d at 72 (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)). To rebut this presumption, the plaintiff bears the burden of establishing "that the indictment was produced by" such fraud or bad-faith police misconduct. *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) (quoting *Colon*, 6060 N.Y.2d at 8383) Likewise, when a plaintiff pursues a claim of malicious prosecution against police officers based on an "unlawful arrest," the "intervening exercise of

independent judgment" by a prosecutor to pursue the case usually breaks the "chain of causation" unless the plaintiff can produce evidence that the prosecutor was "misled or pressured" by the police. *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999).

Dufort bears the burden of establishing that Defendants misled the grand jury and the prosecutors by either withholding or misrepresenting evidence in order to sustain the case against Dufort. With respect to both actions, we conclude that Dufort has at least established a question of material fact as to whether prosecutors and the grand jury were aware of the limited nature of Park's identification and the highly suggestive manner in which it was procured, such that their determinations break the chain of causation.

With respect to the indictment, the record indicates that the only direct evidence presented to the grand jury linking Dufort directly to the attack was Park's eyewitness identification. As noted earlier, that identification was invalid because it was confined to a lineup so defective that a reasonable officer could not use it to find probable cause. More importantly, the record reflects (and the Defendants do not contest) that the grand jury was simply told that Park identified Dufort as an assailant without being informed of the limited nature of Park's identification. Detective Marotta testified that Park viewed Dufort in the lineup, and Park testified that she

picked Dufort out of the lineup as an assailant, but neither clarified that she identified only his jacket. Nor was the grand jury informed that Dufort was the only suspect in the lineup wearing a maroon sweatshirt. *Id.* Given the critical nature of Park's testimony to the case against Dufort, these omissions were glaring and easily could have affected the grand jury's decision. We thus find that, contrary to the district court's holding, Dufort has raised a genuine issue of material fact regarding whether the Defendants' conduct rose to the requisite level of bad faith to rebut the presumption of probable cause ordinarily created by a grand jury indictment.

The Defendants also argue that Dufort has failed to satisfy the "initiation" aspect of the malicious prosecution inquiry, because the District Attorney (rather than the defendant police officers) initiated the proceedings against him. This argument fails for the same reason. The "initiation" requirement is met when the plaintiff can establish that police officers forwarded statements to a prosecutor without sharing that the statements were suspect. *See Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010). Thus, a plaintiff can satisfy the initiation requirement if he can establish that an indictment "was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Dawson v. Snow*, 356 F. App'x 526, 529 (2d Cir. 2009) (summary order) (quoting *Colon*, 60 N.Y.2d at 83). Because the prosecutors'

knowledge is uncertain as discussed above, questions of fact precluding summary judgment as to the initiation of the prosecution remain as well.

Defendants also argue that the record contains no evidence that they acted with malice. **RB 42-43.** Under New York law, malice does not have to be actual spite or hatred, but requires only "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978). Malice may be inferred, however, from the absence of probable cause. *See Lowth v. Town of Cheetowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (citing *Conkey v. New York*, 427 N.Y.S.2d 330, 332 (4th Dep't 1980)). Moreover, Dufort's trial attorney's affidavit stating that he was told by detectives that they were treating Dufort as a suspect solely in order to induce him to testify against other participants also supports the inference that the prosecution against him was improperly motivated. Accordingly, the record presents genuine issues of fact as to whether Defendants acted with malice.

**III.    Qualified Immunity**

In the alternative, the Defendants argue that even if Dufort has established the requisite elements of his false arrest and malicious prosecution claims, they are nonetheless entitled to

qualified immunity because "arguable probable cause" existed to arrest and prosecute him. Qualified immunity establishes a defense for a government actor acting in his official capacity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id*. In the context of false arrest and malicious prosecution claims, an officer is entitled to qualified immunity if he had either probable cause or "arguable probable cause." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (internal quotation marks omitted). Arguable probable cause exists "if officers of reasonable competence could disagree on whether the probable cause test was met." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. 2013) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)).

We conclude that it would be inappropriate to grant qualified immunity to these Defendants at the summary judgment stage. Dufort has established a dispute of material fact as to whether the Defendants intentionally withheld or manipulated key evidence during his arrest and prosecution. He has introduced sufficient evidence from which a reasonable jury could conclude that the Defendants placed him in a deeply defective lineup, extracted an "identification" from Park that was limited to the color of his clothing, and then withheld the suspect nature of this identification from prosecutors and the grand jury. Such a "knowing" violation of

his Fourth and Fifth Amendment rights would, if proven, be enough to overcome the protection of qualified immunity. Although Dufort has not produced any direct evidence of a malicious intent on the part of the Defendants, he is not required to do so. Circumstantial evidence is generally sufficient to prove intent, and Dufort has introduced enough such evidence to survive summary judgment. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) ("Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted.").

### IV. Due Process Claims

Finally, we turn to Dufort's claim that he is entitled to damages under § 1983 because the Defendants allegedly misrepresented or withheld key evidence at his criminal trial about the suggestive nature of the lineup in which Park identified him and the limited nature of Park's identification in violation of his Fifth Amendment right to due process. The Second Circuit has recognized "a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity" that is cognizable under the Fifth Amendment and § 1983. *Zahrey v. Coffey*, 221 F.3d 342, 344 (2d Cir.

2000); *see also Garnett v. Undercover Officer C0039*, 838 F.3d 265, 275 (2d Cir. 2016). We have also recognized that a defendant has a cognizable right to a fair trial, and may sue for damages under § 1983 for *Brady* violations that lead to a distorted evidentiary record being presented to the jury. *See Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) (en banc).

The Defendants argue that Dufort's fair trial claims fail as a matter of law, because the evidence that Dufort claims was withheld or misrepresented was in fact disclosed in a straightforward manner at his trial: the prosecution elicited testimony from Park that she recognized Dufort not by his face, but by his clothing. We agree, and accordingly we affirm the district court's grant of summary judgment with respect to these claims.

The "central objective of [§ 1983] . . . is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief." *Felder v. Casey*, 487 U.S. 131, 139 (1988) (quoting *Burnett v. Grattan*, 468 U.S. 42, 55 (1984)). In defining the appropriate scope of a § 1983 claim asserting the violation of a constitutional right, "courts must closely attend to the values and purposes of the constitutional right at issue." *Manuel v. City of Joliet*, 137 S. Ct. 911, 920–21 (2017). The constitutional right on which Dufort's § 1983 due process claim rests is the right to have one's case tried based on an accurate evidentiary

record that has not been manipulated by the prosecution. *See Brady v. Maryland*, 373 U.S. 83, 87–88 (1963) (holding that the right to due process has been violated whenever "[a] prosecution . . . withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty," because such a withholding "casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice"); *see also Garnett*, 838 F.3d at 275 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." (internal quotation marks omitted)).

Here, even assuming *arguendo* that the Defendants attempted to distort the trial record by misrepresenting the nature of Park's identification, it is undisputed that that attempt failed. Park herself testified at trial that she could only identify Dufort by the color of his jacket. Any attempt to distort the evidentiary record was fully mitigated by this disclosure. Mere attempts to withhold or falsify evidence cannot form the basis for a § 1983 claim for a violation of the right to due process when those attempts have no impact on the conduct of a criminal trial. *Cf. Zahrey*, 221 F.3d at 348–50 (holding that "[t]he manufacture of false evidence, in and of itself, . . . does

not impair anyone's liberty, and therefore does not impair anyone's constitutional right" when that manufacture does nothing concrete to "precipitate [a] sequence of events that result[s] in a deprivation of [the plaintiff's] liberty" (internal quotation marks and footnote omitted)).[7]

## CONCLUSION

For the reasons stated above, we VACATE in part the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.

---

[7] Dufort also appears to allege a "substantive due process" claim, based on his constitutional right not to be arrested or detained without probable cause. Insofar as this claim stems from the Defendants' decision to arrest Dufort and his subsequent five-year detention on Rikers Island, it appears to be entirely coextensive with Dufort's claims for false arrest and malicious prosecution and is therefore subsumed under those claims. *See Manuel*, 137 S. Ct. at 917–19 (noting that claims for pretrial detention based on fabricated or withheld evidence are evaluated as malicious prosecution claims under the Fourth Amendment); *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007) (noting that the forcible detention of plaintiff without probable cause is conceptualized as a false arrest claim under the Fourth Amendment for § 1983 purposes).