23-7699-cr
*United States of America v. Miller*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of August, two thousand twenty-five.

PRESENT:
> AMALYA L. KEARSE,
> REENA RAGGI,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                                          23-7699-cr

CLYDE MILLER,

> *Defendant-Appellant.*

_____

| | |
|---|---|
| FOR DEFENDANT-APPELLANT: | James M. Branden, Law Office of James M. Branden, Staten Island, NY. |

FOR APPELLEE:                                    Chand Edwards-Balfour, Saritha Komatireddy, Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Margo K. Brodie, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on November 2, 2023, is **AFFIRMED**.

Defendant-Appellant Clyde Miller ("Miller") appeals from the district court's November 2, 2023 judgment of conviction. Following a jury trial, Miller was convicted of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) (count one); possession of a firearm during a drug trafficking crime (*i.e.*, count one), in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count two); and possession of a firearm after a prior felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (count three). The district court subsequently sentenced Miller to a combined term of 180 months' imprisonment.

On appeal, Miller contends that 1) the evidence seized from him during a search incident to his unlawful arrest should have been suppressed; 2) there was insufficient evidence to convict him of conspiracy to distribute heroin; and 3) the felon-in-possession conviction should be vacated as unconstitutional given the Supreme Court's decisions in

2

*New York State Rifle & Pistol Ass'n. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rehaif*, 588 U.S. 225 (2019).  We disagree with each argument.

## BACKGROUND

In March 2017, the Broward County Sheriff's Office and the Drug Enforcement Agency ("DEA") conducted a drug trafficking investigation based out of Florida that ultimately focused on Anthony Sean Yancey.  As part of the undercover investigation, Detective Canales met with Yancey's brother to arrange the purchase of three kilograms of heroin from Yancey.  Yancey told Detective Canales that he would bring other individuals to the transaction and that they would be close by.   Yancey added that his "whole team [was] going to be standing strong with [him]."  Government's Br. at 3.

Detective Canales and Yancey planned to conduct the transaction in New York on April 17, 2017.  That same day, Miller drove 350 miles from Oil City, Pennsylvania, to Brooklyn, New York, arriving at 9:24 AM to meet with Yancey, who had traveled there from North Carolina earlier that morning.

Shortly after Miller arrived in Brooklyn, the DEA began surveilling him, Yancey and other individuals, from Brooklyn until their arrest at the Hilton hotel later that afternoon at approximately 3:30 PM.  DEA agents arrested Yancey after he produced the drugs to Detective Canales.  They also arrested Miller and Jenkins who were waiting in the car one block away.  During Miller's arrest, the agents recovered a .380 caliber handgun from his waistband loaded with eight bullets as well as an iPhone 5 and cash

3

from his person. Near the vehicle, police located a second .380 caliber handgun containing another six bullets. After searching the vehicle pursuant to a search warrant, police located a box of .380 caliber ammunition missing fourteen bullets.

We assume the parties' familiarity with the remaining facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision.

## DISCUSSION

### I. Motion to Suppress

Prior to trial, Miller moved to suppress all physical evidence seized from him during his arrest, including the firearm. The district court held a hearing and subsequently denied Miller's suppression motion, finding his arrest supported by probable cause.[1]

"The standard of review for evaluating the district court's ruling on a suppression motion is clear error as to the district court's findings of historical facts, but *de novo* as to ultimate legal conclusions, such as the existence of probable cause." *United States v. Thomas*, 788 F.3d 345, 349 (2d Cir. 2015). "Probable cause is 'a fluid concept . . . not readily, or even usefully, reduced to a neat set of legal rules.'" *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)). In general,

---

[1] The district court granted Miller's motion to suppress statements he made to DEA agents prior to receiving *Miranda* warnings, and the government did not appeal this ruling.

4

probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Ultimately, whether probable cause exists 'depends on the totality of the circumstances' of each case, and is not susceptible to 'precise definition or quantification into percentages.'" *Dufort*, 874 F.3d at 348 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Here, the DEA continuously surveilled Yancey beginning at 10:30 AM on the morning of April 17, 2017. They observed Miller with Yancey and Jenkins on Winthrop Street in Brooklyn until they drove together to the Hilton later that afternoon, where Miller remained nearby while Yancey consummated the controlled buy with Detective Canales. DEA agents continued to surveil the individuals, including Miller, and observed the events immediately preceding the controlled transaction. Miller's actions comported with the DEA agents' understanding that, in drug transactions of this magnitude, other individuals often serve "as a lookout or getaway car or somebody who provides extra manpower." App'x 81. His actions were consistent with Yancey's statements to Detective Canales that he would bring his entire team to the site of the deal. Based on the DEA

5

agents' knowledge of Miller's actions prior to the transaction, and the special agents' experience in investigating drug crimes, they had probable cause to arrest Miller.

## II.    Sufficiency of the Evidence

Miller's contention that the government did not present sufficient evidence to sustain the drug trafficking conspiracy conviction is unavailing.

We review sufficiency of the evidence challenges *de novo*. *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018). In doing so, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *accord Baker*, 899 F.3d at 129. When the conviction at issue is a conspiracy, "deference to the jury's findings is especially important," *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (internal quotation marks omitted), because often, the evidence connecting a defendant to the conspiracy "may be circumstantial in nature," *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 113 (2d Cir. 2008) (internal quotation marks omitted).

"To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; that he knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy; and that an overt act in furtherance of the conspiracy was committed." *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008) (internal quotation marks omitted). But "[t]he government

6

need not show that the defendant knew all the details of the conspiracy, 'so long as he knew its general nature and extent.'" *Id.* (quoting *United States v. Rosa*, 17 F.3d 1531, 1543 (2d Cir. 1994)).

Here, the trial evidence was sufficient to establish Miller's requisite knowledge and intent to conspire with Yancey to distribute three kilograms of heroin on April 17, 2017, so as to support his conviction. On the day of the drug transaction, Miller left his home at approximately 3:00 AM to travel across state lines to meet with Yancey. *See Huezo*, 546 F.3d at 182–83 (holding that a defendant who traveled from California to Connecticut days before an offense occurred "supports a reasonable inference" that the defendant traveled "for the express purpose of facilitating the money laundering conspiracy"). Miller then remained by Yancey's side for the remainder of the day, including while Yancey made several phone calls in preparation for the transaction. By driving with Yancey to the Hilton in the same car he traveled to New York in and remaining close by with a loaded firearm, Miller's conduct supports an inference that he was a member of the drug trafficking conspiracy and took those overt actions in furtherance of that conspiracy. *Id.* at 182 (holding that "[b]ased on the complexity and scale of the money laundering scheme, common sense and experience would support an inference that the principals in the conspiracy would not have trusted an outsider"). Considered in the aggregate and viewed in the light most favorable to the government, a rational juror could have found that Miller knowingly engaged in the conspiracy with Yancey to traffic

7

heroin.  *See United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (explaining that in a sufficiency of the evidence challenge, a court reviews the evidence "in conjunction, not in isolation" (internal quotation marks omitted)).

### III.    Constitutional Claims

Miller challenges the constitutionality of his conviction for felon in possession under § 922(g)(1) on two grounds: 1) restrictions on firearm possession are unconstitutional given the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 25 (2022), which in Miller's view, guarantees his right to carry firearms under the Second Amendment; and 2) he was prejudiced by the district court's failure to instruct the jury that it must find that Miller knew he was a felon and, as such, was barred from possessing a firearm, as is required under *Rehaif v. United States*, 588 U.S. 225 (2019).  Miller's arguments under both *Bruen* and *Rehaif* lack merit.

Because Defendant did not raise these constitutional challenges in the court below, this Court reviews his constitutional claims for plain error.  *See United States v. Le*, 902 F.3d 104, 109 (2d Cir. 2018). We will reverse only if "(1) there is an 'error'; (2) 'the error is clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights. . .'; and (4) 'the error seriously affects the fairness, integrity or public reputation of [the] judicial proceedings.'"  *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013) (alteration adopted) (quoting *United States v. Marcus,* 560 U.S. 258, 262 (2010)).

8

### A. Miller's *Bruen* Challenge

Since Miller filed his appeal, this Court decided *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025).

Therein, we reaffirmed that § 922(g)(1) remains a constitutional restriction on the Second Amendment for individuals convicted of felonies. *Id.* at 74–75 (citing *United States v. Bogle*, 717 F.3d 281, 281–82 (2d Cir. 2013)). Indeed, we also clarified that § 922(g)(1) is constitutional as applied to convicted felons, regardless of whether the crime of conviction is violent or nonviolent. *Id.* at 92–93. *Zherka* therefore forecloses Miller's argument that to § 922(g)(1) is unconstitutional, both facially and as-applied to his conviction.

### B. Miller's *Rehaif* Challenge

Here, the district court failed to instruct the jury that it must find Miller knew of his convicted felon status at the time he possessed the .380 caliber firearm in April 2017. Both Miller and the government acknowledge that the failure to do so was error. The parties disagree, however, as to whether that failure affected Miller's substantial rights. To succeed in demonstrating that the *Rehaif* error affected his substantial rights, Miller "has the burden of showing that, if the [d]istrict [c]ourt had correctly instructed the jury on the *mens rea* element of a felon-in-possession offense, there is a reasonable probability

that he would have been acquitted." *Greer v. United States*, 593 U.S. 503, 508 (2021) (internal quotation marks omitted).

Miller's argument that notwithstanding his incarceration, he did not know that he was previously convicted of a felony is insufficient to satisfy his burden. More importantly, it is contradicted by the record. Prior to his arrest in this case, Miller had been convicted of three felonies.[2] Like in *Greer*, Miller stipulated at trial that he had previously been convicted of a felony offense. And, Miller wrote handwritten letters to the judge in his West Virginia case, detailing his years in custody for that offense. *See United States v. Johnson*, 820 F. App'x 29, 34 (2d Cir. 2020) ("[W]here a defendant has served a prison sentence of more than a year, it is presumed that he knows of his status as a felon under § 922(g)(1)."). Accordingly, the record demonstrates that Miller understood that he had previously been convicted of a felony offense at the time he possessed a firearm, and thus, the district court's failure to properly instruct the jury did not affect Miller's substantial rights.

\*      \*      \*

---

[2] Miller was convicted of (1) possession with intent to deliver a controlled substance in Montgomery, Pennsylvania, for which he served two years' imprisonment; (2) carrying and transporting a handgun—and shooting a victim in the foot—in Washington County, Maryland, for which he served three years' imprisonment; and (3) distribution of cocaine base in the Northern District of West Virginia, for which he served forty-four months' imprisonment.

We have considered Miller's remaining arguments and conclude that they are without merit.  For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court