ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Plaintiff Jerome Thagard ("Plaintiff") commenced this civil rights action against former City of Buffalo Police Department Detective Mark Lauber ("Defendant"), alleging causes of action for malicious prosecution and the deprivation of his right to a fair trial pursuant to 42 U.S.C. § 1983. (Dkt. 1). Specifically, Plaintiff claims that Defendant conducted materially defective identification procedures concerning two of the three eyewitnesses to the murder of Joseph Northrup ("Northrup") and then failed to disclose those defects, which resulted in Plaintiff's criminal prosecution and wrongful conviction at trial. (Id. ).
Presently before the Court is Defendant's motion for summary judgment. (Dkt. 22). Because there are issues of material fact for a jury to resolve, Defendant's motion is denied.
BACKGROUND
On the evening of April 29, 2009, sometime after 8:00 P.M., Northrup and his girlfriend, Suzanne Grover ("Grover"), engaged in a verbal altercation at their residence *675 before Northrup fled the house and ran through the nearby housing projects. (Dkt. 22-15 at 92-95).[1] Grover pursued him on foot. (Id. at 94-95). Northrup ran through a "big group of people" standing in the back of the housing projects, and then engaged in a conversation with another individual. (Id. at 96, 98). Grover disengaged her pursuit and left the housing projects. (Id. at 98). She then entered a green Jeep driven by her sister, Amanda Basile ("Basile"); Basile's friend, Christina Picone ("Picone"), and Grover's three-year-old son rode as passengers. (Id. at 98-99). Basile and Picone had followed Grover after she and Northrup fled from the residence. (Dkt. 22-18 at 13-14).[2]
After Basile, Picone, and Grover drove away, they soon spotted Northrup again, at which time Grover left the Jeep and once again gave chase into an empty lot. (Dkt. 22-15 at 99-100). Basile and Picone parked the Jeep in a nearby parking lot. (Dkt. 22-18 at 17-18). Suddenly, a male individual (the "shooter") ran up to the driver's side door, and asked Basile if everything was all right and whether he should "go over there and shoot [Northrup]." (Id. at 18). Basile and Picone both observed that the shooter was carrying a gun in his hands. (Id. at 20; see Dkt. 22-17 at 17).[3] Basile was confused by the shooter's question, and before she could fully react, the shooter began to run towards Grover and Northrup. (Dkt. 22-18 at 21). Basile believed that she heard other people "in the background screaming" the name "Jerome." (Id. at 22).
As Grover and Northrup reengaged in their verbal dispute, the shooter appeared from behind Grover carrying a gun. (Dkt. 22-15 at 102-03). The shooter declared that he had been told that Northrup was bothering the girls. (Id. at 106-07). Northrup approached the shooter and stated that "he's not the only one with guns." (Id. at 106-08). The shooter then fired his gun several times at Northrup, who fell to the ground. (Id. at 108). Northrup later succumbed to his wounds and died. (Id. at 112-13).
After the City of Buffalo Police Department secured the scene, the three eyewitnesses were taken to police headquarters. Each witness was interviewed and performed a photo array identification. Defendant conducted a photo array identification with Basile and Grover, while Picone underwent the photo array procedures at the direction of another police officer. (See Dkt. 22-3). Each eyewitness identified Plaintiff as the shooter. (Dkt. 22-7; Dkt. 22-8; Dkt. 22-11). Plaintiff lived near the crime scene (see Dkt. 22-23), and a search warrant executed at Plaintiff's residence produced a black hoodie with print on the front that was similar to the general descriptions provided by the eyewitnesses (Dkt. 22-13; see Dkt. 22-4 at 2; Dkt. 22-5 at 1; Dkt. 22-9 at 1). Plaintiff's trial resulted in his conviction for Northrup's murder.
Subsequently, new evidence was discovered that suggested that the eyewitness testimony, which was the primary evidence supporting the prosecution's case, was unreliable.
*676 Specifically, Basile provided an affidavit averring that Defendant threatened to arrest her if she did not identify someone in the photo array as the shooter. (Dkt. 22-21 at 12). Basile, who was 16 years old at the time (Dkt. 25-1 at 3), also averred that after she had identified Plaintiff as the shooter, Defendant told her that Grover had identified the same person (Dkt. 22-21 at 12). Although Basile had been unsure as to whether she correctly identified the shooter, learning that Grover selected the same individual "convinced" her that she had done so. (Id. ). Grover also submitted a statement to the police indicating that Defendant told her that another eyewitness had already identified one of the six individuals presented in the photo array before she identified Plaintiff as the shooter. (Dkt. 25-2 at 2). Although there is no suggestion that Picone's photo array was conducted improperly, she submitted an affidavit indicating that she only observed the shooter from the side and from the back, and that she was uncertain that her identification of Plaintiff was accurate. (Dkt. 22-21 at 14-15). Instead, she explained that she believed the shooter was of Puerto Rican descent, and that she picked the individual who most closely resembled a Puerto Rican individual. (Id. at 14). Plaintiff's motion to vacate his conviction was granted on the consent of the District Attorney's Office. (See id. ; Dkt. 22-22).
Plaintiff brings this civil rights action against Defendant for malicious prosecution and for the violation of his right to a fair trial as a result of Defendant's alleged fabrication and concealment of falsified evidence. (Dkt. 1). Defendant moves for summary judgment, primarily arguing that Plaintiff has failed to establish a genuine issue of material fact as to the elements of each cause of action, and, in any event, that he is entitled to qualified immunity, and that Plaintiff's lawsuit is barred by the doctrines of res judicata and collateral estoppel. (Dkt. 22-25).
DISCUSSION
I. Defendant's Motion For Summary Judgment
A. Legal Standard
Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. Scott v. Harris , 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ).
"Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the 'evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.' " Rowe v. Wal-Mart Stores, Inc. , 11 F.Supp.2d 265, 266 (W.D.N.Y. 1998). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial .' " Caldarola v. Calabrese , 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. , 475 U.S. at 586-87, 106 S.Ct. 1348 ). "[T]he mere existence of some alleged factual dispute between *677 the parties will not defeat an otherwise properly supported motion for summary judgment...." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
B. Plaintiff's Claims Are Not Barred by the Doctrines of Res Judicata or Collateral Estoppel
1. The Principles of Res Judicata Do Not Apply
"In a federal § 1983 suit, the same preclusive effect is given to a previous state court proceeding as would be given to that proceeding in the courts of the State in which the judgment was rendered." Leather v. Eyck , 180 F.3d 420, 424 (2d Cir. 1999). "Res judicata precludes parties from relitigating claims both actually litigated or which could have been litigated in a prior proceeding." Taylor v. Brentwood Union Free Sch. Dist. , 908 F.Supp. 1165, 1178 (E.D.N.Y. 1995). "Res judicata, or claim preclusion, means that 'even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence.' " Burton v. Niagara Frontier Transp. Auth. , No. 11-CV-00971, 2013 WL 3423754, at *2 (W.D.N.Y. July 8, 2013) (quoting L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc. , 198 F.3d 85, 88 (2d. Cir. 1999) ). However, "under New York law, the form of relief being sought is an element of the litigant's claim." Leather , 180 F.3d at 425.
Since Plaintiff could not have sought damages for his alleged constitutional violations in his state criminal proceeding, the principles of res judicata do not bar his § 1983 causes of action. See Plonka v. Brown , 2 F. App'x 194, 197 n.3 (2d Cir. 2001) ("[B]ecause damages would not have been available to [the plaintiff] in the earlier New York state criminal proceeding against him, claim preclusion does not bar his present suit for damages."); Leather , 180 F.3d at 425 ("[B]ecause the nature of the prior state court proceeding was such that [the plaintiff] could not have sought damages for his alleged constitutional injuries (while defending himself on the charge of driving while impaired), res judicata does not bar his federal § 1983 suit for damages."); Greene v. Sweeney , No. 83 Civ. 2264 (LBS), 1985 WL 547, at *2 (S.D.N.Y. Apr. 25, 1985) ("[The] plaintiff's participation in the previous action was for the purpose of defending himself against criminal charges. Although [the] plaintiff had the opportunity to raise (and indeed did raise) the constitutional issue which underlies the instant complaint, he obviously did not have the opportunity to litigate his claim for damages as part of his criminal defense."); see also Neaderland v. C. I. R. , 424 F.2d 639, 641 (2d Cir. 1970) ("When a civil trial follows criminal proceedings which were based on the same facts, a different cause of action is involved and the doctrine of collateral estoppel rather than that of res judicata must be considered.").
2. Collateral Estoppel is Inapplicable Because Plaintiff's Conviction Has Been Vacated
"Principles of collateral estoppel may bar relitigation in a subsequent civil rights action in federal court of an issue that was determined in a state court criminal proceeding. The federal court must, however, apply the collateral estoppel rules of the state which rendered the judgment." Owens v. Treder , 873 F.2d 604, 607 (2d Cir. 1989) (citation omitted). "Under New York law, the doctrine of issue preclusion only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding."
*678 Colon v. Coughlin , 58 F.3d 865, 869 (2d Cir. 1995) (footnote omitted).
Defendant claims that Plaintiff should be barred from challenging the issues underlying his complaint because he "had the full opportunity to litigate and challenge the methods used by [Defendant] ... in conducting a photo-array, and [he] apparently failed to do so." (Dkt. 22-25 at 14). However, "Defendant['s] interpretation of collateral estoppel seems plainly wrong-a vacated criminal conviction cannot have preclusive effect." Dukes v. City of Albany , 289 F.Supp.3d 387, 393-94 (N.D.N.Y. 2018) (collecting cases). "Neither the verdict of a jury nor the findings of a court in a prior action upon the precise point involved in a subsequent action between the same parties constitute a bar, unless followed by a judgment based thereon, or into which the verdict or findings entered." Peterson v. Forkey , 50 A.D.2d 774, 774, 376 N.Y.S.2d 560 (1st Dep't 1975) (quoting Rudd v. Cornell , 171 N.Y. 114, 128-29, 63 N.E. 823 (1902) ). "The judgment is the bar, and not the preliminary determination of the court." Rudd , 171 N.Y. at 129, 63 N.E. 823. "Thus, when no order or final judgment has been entered on a verdict or decision, or when the judgment is subsequently vacated , collateral estoppel is inapplicable." Church v. N.Y. State Thruway Auth. , 16 A.D.3d 808, 810, 791 N.Y.S.2d 676 (3d Dep't 2005) (emphasis added); see Ruben v. Am. & Foreign Ins. Co. , 185 A.D.2d 63, 65, 592 N.Y.S.2d 167 (4th Dep't 1992) ("Because the judgment was vacated, the jury verdict lacks finality and cannot be given collateral estoppel effect."); see Kogut v. County of Nassau , No. 06-CV-6695 (JS)(WDW), 2009 WL 5033937, at *10 (E.D.N.Y. Dec. 11, 2009) (holding that the principles of collateral estoppel did not bar a challenge to the voluntariness of a confession, even though that issue had been necessarily decided in the prior action, where the plaintiff had subsequently been acquitted (citing Boston Firefighters Union Local 718 v. Boston Chapter NAACP, Inc. , 468 U.S. 1206, 1211, 104 S.Ct. 3576, 82 L.Ed.2d 874 (1984) ("[A] vacated judgment, by definition, cannot have any preclusive effect in subsequent litigation.") ) ).
Therefore, because Plaintiff's judgment of conviction has since been vacated, he is not barred from challenging the propriety of the photo-array procedures under principles of issue preclusion.
C. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Malicious Prosecution Cause of Action
1. Legal Standard
"In the absence of federal common law, the merits of a claim for malicious prosecution under § 1983 are governed by state law." Dufort v. City of New York , 874 F.3d 338, 350 (2d Cir. 2017).
In New York, the four essential elements of a malicious prosecution claim are: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice."
Id. (quoting Smith-Hunter v. Harvey , 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000) ). Defendant contends that Plaintiff cannot establish the first, third, and fourth elements of this cause of action. (Dkt. 22-25 at 5).
2. The Commencement or Continuation of a Criminal Proceeding by the Defendant Against the Plaintiff
Defendant argues that Plaintiff cannot establish the first element of a malicious prosecution cause of action because "the *679 independent actions of the Erie County District Attorney's Office, at the Wade/Huntley hearing and during the course of the trial, broke any causal chain." (Id. ).
"[I]f the prosecution relied on independent, untainted information to establish probable cause, a complaining official will not be responsible for the prosecution that follows." Rentas v. Ruffin , 816 F.3d 214, 221 (2d Cir. 2016). Where this is the case, "the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment." Townes v. City of New York , 176 F.3d 138, 147 (2d Cir. 1999). However,
if the [assistant district attorney] was simply not informed of the alleged problems with the evidence, then he could not be a superseding cause of the deprivation of [the plaintiff's] due process rights. And if the [assistant district attorney]'s decision to prosecute [the plaintiff] is not a superseding cause, then a jury could find that [the d]efendants' procedures for producing witness evidence proximately caused the alleged rights violations.
Bermudez v. City of New York , 790 F.3d 368, 375 (2d Cir. 2015) (citation omitted); see also Brandon v. City of New York , 705 F.Supp.2d 261, 276 (S.D.N.Y. 2010) (stating that the Second Circuit has permitted "claims for both malicious prosecution and denial of his fair right to trial based on the same alleged fabrication of evidence" (citing Ricciuti v. N.Y.C. Transit Auth. , 124 F.3d 123, 130-31 (2d Cir. 1997) ) ).
Viewing the facts in the light most favorable to the non-movant, Plaintiff's submissions raise an issue of fact as to whether Defendant performed the photo array identification in a threatening and suggestive manner. "[I]t is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty." Zahrey v. Coffey , 221 F.3d 342, 352 (2d Cir. 2000) ; see Blake v. Race , 487 F.Supp.2d 187, 211 (E.D.N.Y. 2007) ("[The] defendants cannot hide behind the decision of the [district attorney] to prosecute when it was [the] defendants who allegedly fed the facts to [the police informant], thereby providing the unknowing [district attorney] with what may be considered a fabricated eyewitness, who made the line-up identification and provided testimony."). The fact that the District Attorney's Office decided to interview, prepare, and call these witnesses at trial does not alter this conclusion. (Dkt. 27 at 4 (noting that "[t]he witnesses were offered by the District Attorney's Office and, it absolutely must be presumed, were interviewed and prepped by that Office") ); see Bermudez , 790 F.3d at 375-76 ("Once the witnesses had adopted a story-either because of a suggestive presentation of photographs or because of more overt coercion by the officers-they might very well have decided to stick with that story (or become convinced that it was true), and for that reason have misinformed the [assistant district attorney] when he subsequently questioned them."); see also Dufort , 874 F.3d at 352 ("Whether [the eyewitness] ever told prosecutors prior to trial that she could only recognize [the plaintiff] by the color of his jacket is a disputed question of fact, and must be evaluated by a jury.").
A reasonable jury could conclude that Defendant never informed the District Attorney's Office of the allegedly suggestive nature of the photo array identifications, and furthermore, that Defendant's alleged manipulation of the eyewitness identification ultimately influenced the trial testimony.
*680 Under those factual circumstances, the District Attorney's decision to prosecute would not be a superseding cause of the alleged deprivation of Defendant's constitutional rights.
3. The Absence of Probable Cause for the Criminal Proceeding
"[E]ven where plaintiff alleges, as here, that the malicious prosecution is based on fabricated evidence, 'the existence of probable cause independent of the fabricated evidence is a defense to that claim.' 'To hold otherwise would untether the malicious prosecution claim from its Fourth Amendment roots.' " Hoyos v. City of New York , 999 F.Supp.2d 375, 390 (E.D.N.Y. 2013) (quoting Morse v. Spitzer , No. 07-CV-4793 (CBA) (RML), 2012 WL 3202963, at *4-5 (E.D.N.Y. Aug. 3, 2012) ). "[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.' " Savino v. City of New York , 331 F.3d 63, 72 (2d Cir. 2003) (quoting Colon v. City of New York , 60 N.Y.2d 78, 83, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983) ). "To rebut this presumption, the plaintiff bears the burden of establishing 'that the indictment was produced by' such fraud or bad-faith police misconduct." Dufort , 874 F.3d at 352 (quoting Bernard v. United States , 25 F.3d 98, 104 (2d Cir. 1994) ).
Defendant argues that because there is no evidence that he acted in "bad faith," Plaintiff's claim must be dismissed. (Dkt. 22-25 at 7). However, the record contains the eyewitnesses' post-trial affidavits and post-trial police statements. (Dkt. 22-21 at 11-15; Dkt. 25-1; Dkt. 25-2). Basile avers that Defendant threatened to arrest her if she did not identify someone in the photo array as the shooter. (Dkt. 22-21 at 12; see Dkt. 25-1 at 3 (stating that she was "scared to death" at the time Defendant was interviewing her, and that Defendant was "yelling at [her] and stuff") ). After eventually selecting Plaintiff's photo in the array, Defendant left the room. (Dkt. 22-21 at 12; Dkt. 25-1 at 3). After he spoke with Grover, Defendant returned to Basile's room where he informed her that Grover also had identified Plaintiff as the shooter. (Dkt. 22-21 at 12; Dkt. 25-1 at 3). Although Basile had been unsure whether she correctly identified Plaintiff as the shooter-and even averred that she "didn't believe that [he] was the same man [she] saw earlier"-she became "convinced" she had made the right choice after hearing that Grover had named the same individual. (Dkt. 22-21 at 12; see Dkt. 25-1 at 3). In addition, during Grover's photo array procedure-and after Grover had already informed Defendant that none of the pictures appeared to depict the shooter-Defendant told her to " '[l]ook again because someone else already identified a person on one of the pages as the person that killed [Northrup].' " (Dkt. 25-2 at 2). These facts, if credited, paint a strong picture of bad faith conduct. Since the overall case against Plaintiff was primarily based upon the identification evidence provided by these three eyewitnesses (see Dkt. 22-22 at 1 (averring that "[t]he principal evidence at trial consisted of testimony from three eyewitnesses who had each identified [Plaintiff] from a photo array") ), there is a genuine issue of material fact as to whether the indictment was procured by police misconduct.
Defendant also argues that probable cause to prosecute Plaintiff existed separate and apart from the rebuttable presumption created by the grand jury indictment. (Dkt. 22-25 at 7). "Probable cause to arrest exists when the arresting *681 officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " Escalera v. Lunn , 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant v. Okst , 101 F.3d 845, 852 (2d Cir. 1996) ).[4] "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." Martinez v. Simonetti , 202 F.3d 625, 634 (2d Cir. 2000) (quotation marks and citation omitted). "A positive photo identification is normally sufficient to establish probable cause to arrest. However, 'an identification that is tentative or uncertain may, on its own, be insufficient' to give rise to probable cause." Daughtry v. New York , No. 12-CV-2655 (NGG) (RER), 2015 WL 2454115, at *3 (E.D.N.Y. Feb. 23, 2015) (citations omitted) (quoting Williams v. City of New York , No. 10-CV-2676 (JG) (LB), 2012 WL 511533, at *4 (E.D.N.Y. Feb. 15, 2012) ), report and recommendation adopted sub nom. Daughtry v. City of New York , No. 12-CV-2655 (NGG) (RER), 2015 WL 2454117 (E.D.N.Y. May 21, 2015) ; see Mayes v. City of Hammond , 442 F.Supp.2d 587, 648 (N.D. Ind. 2006) ("[T]here are genuine issues of fact regarding the suggestive and tentative nature of the ... identification.").
The primary evidence used to support Plaintiff's wrongful conviction was the identification evidence supplied by the three eyewitnesses. (See Dkt. 22-22). "Wrongful convictions based on mistaken eyewitness identifications pose a serious danger to defendants and the integrity of our justice system." People v. Marshall , 26 N.Y.3d 495, 502, 45 N.E.3d 954 (2015) ; see People v. Santiago , 17 N.Y.3d 661, 669, 934 N.Y.S.2d 746, 958 N.E.2d 874 (2011) ("[M]istaken eyewitness identifications play a significant role in many wrongful convictions."). For this reason, it is prudent to remember that "[v]ictim identifications, although often sufficient to support probable cause, cannot always be relied upon by police officers; if there are specific reasons to doubt the eyewitness, then the officer may not rely wholly upon the identification." DaCosta v. Tranchina , 281 F.Supp.3d 291, 301 (E.D.N.Y. 2017), appeal filed sub nom. DaCosta v. City of N.Y. , No. 18-95 (2d Cir. Jan. 12, 2018). As noted above, the record submissions raise an issue of fact as to whether the identifications of Basile and Grover were compromised by police misconduct.
However, Picone also identified Plaintiff as the shooter, and her identification procedure did not occur under Defendant's direction. (See Dkt. 22-3 at 1; Dkt. 22-11). Nonetheless, Picone averred that she only observed "the side and the back of [the shooter's] head." (Dkt. 22-21 at 14). Indeed, she indicated that she believed the *682 shooter was of Puerto Rican descent, and that she "picked the one who most looked Puerto Rican." (Id. ). This averment suggests that she may have made only a "comparative identification" of Plaintiff during the photo array procedure, which is not sufficient to establish probable cause. See Torres v. City of Los Angeles , 548 F.3d 1197, 1209 (9th Cir. 2008) (finding that a reasonable jury could conclude that the "identification lacked sufficient indicia of reliability and thus did not provide the detectives with probable cause" where the witness indicated that the individual "looked more like" the perpetrator "than the other persons depicted"); Williams , 2012 WL 511533, at *4 ("Of particular concern are what may be called 'comparative identifications'-those in which a witness states only that a suspect appears more like the perpetrator than the other individuals included in a photo array."); see also Smith v. Gildea , No. 97 C 1581, 1998 WL 703677, at *8 (N.D. Ill. Sept. 30, 1998) (finding that the eyewitness's identification did not alone establish probable cause where the eyewitness indicated that the individual depicted "strongly resembled" the perpetrator).
For these reasons, there are at least questions of fact as to whether Picone's eyewitness identification carried sufficient indicia of reliability, and thus, a reasonable jury could find that none of the three eyewitness identifications supported an objective belief that probable cause existed.
4. Actual Malice
"[A]ctual malice can be inferred when a plaintiff is prosecuted without probable cause." Rentas , 816 F.3d at 221 ; see Polanco v. City of New York , No. 14 CIV. 7986 (NRB), 2018 WL 1804702, at *6 n.5 (S.D.N.Y. Mar. 28, 2018) (noting that "at the summary judgment stage, ... any finding of malice hinges on [the] probable cause analysis"). For the reasons discussed above, genuine issues of material fact preclude a determination that probable cause existed to support Plaintiff's continued prosecution. "[O]nce a question of material fact is found as to probable cause, 'the element of malice also becomes an issue of material fact' and precludes dismissal on summary judgment." Jenkins v. City of NY , No. 10 Civ. 4535 (AJN), 2013 WL 870258, at *12 (S.D.N.Y. Mar. 6, 2013) (quoting Boyd v. City of New York , 336 F.3d 72, 78 (2d Cir. 2003) ).
Therefore, Defendant's motion for summary judgment is denied as to Plaintiff's first cause of action because there are genuine issues of material fact as to the disposition of the first, third, and fourth elements of this claim.[5]
D. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiffs Claim for the Denial of His Right to a Fair Trial
The claim of denial of the right to a fair trial due to fabricated evidence[6] "stems from the Sixth Amendment and the *683 Due Process clauses of the Fifth, Sixth, Fourteenth Amendments of the U.S. Constitution. Fabrication of evidence constitutes a violation of this right to a fair trial." Ying Li v. City of New York , 246 F.Supp.3d 578, 627-28 (E.D.N.Y. 2017) (citations omitted); see also Zahrey v. City of New York , No. CIVA 98-4546 (DCP) (JCF), 2009 WL 1024261, at *8 n.14 (S.D.N.Y. Apr. 15, 2009) (noting that "evidence fabrication serves to both improperly charge and/or arrest a plaintiff as well as unfairly try him," and thus, it "involves aspects of both the Fourth Amendment and procedural due process"). "[T]here is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty." Zahrey , 221 F.3d at 344 ; see Henry v. City of New York , No. 02 Civ. 4824 (JSM), 2003 WL 22077469, at *4 (S.D.N.Y. Sept. 8, 2003) ("[W]hile there is no constitutional right to be free from having evidence fabricated against an individual, the offense rises to a constitutional violation if one is deprived of his liberty because of the fabrication.").
The Second Circuit has "also recognized that a defendant has a cognizable right to a fair trial, and may sue for damages under § 1983 for Brady violations that lead to a distorted evidentiary record being presented to the jury." Dufort , 874 F.3d at 354-55. Although somewhat related, "where a plaintiff can demonstrate that police have turned over fabricated evidence to the prosecutor[,] ... [s]uch conduct can be redressed, not as a Brady violation, but because it violates the right to not ... be deprived of liberty on the basis of false and fabricated evidence." Myers v. County of Nassau , 825 F.Supp.2d 359, 367 (E.D.N.Y. 2011).
The allegedly improper nature of the identification procedures was not exposed during the Wade/Huntley hearing. (See Dkt. 22-14).[7] In fact, the identities of the eyewitnesses remained undisclosed for purposes of determining whether the photo array was unduly suggestive. (Id. at 4). Although Plaintiff's counsel cross-examined each of the eyewitnesses and Defendant during trial, the factual basis for Plaintiff's current assertion that the identification evidence was fabricated was not revealed until after Plaintiff was convicted.
Furthermore, any argument that other evidence in the record rendered the alleged fabrication irrelevant is unsupported by the record and fails to appreciate the gravity of Plaintiff's assertions. (See Dkt. 27 at 5 ("[E]ven assuming the Plaintiff's version of the procedures which were used, ... Plaintiff was not deprived of a fair trial because there was substantial evidence from other witnesses and the Plaintiff was free to challenge and explore the alleged suggestiveness at trial, even if [he] apparently [chose] not to.") ). In Ricciuti , the defendants argued that "so long as there was probable cause for [the plaintiff]'s arrest-independent of the allegedly fabricated evidence-the fabrication of evidence is legally irrelevant." 124 F.3d at 129-30. However, the Second Circuit explained that such an argument "betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society." Id. at 130. The court stated that permitting the fabrication of evidence would "make a *684 mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice." Id. As such, the Ricciuti court concluded that "a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.' " Id. (quoting United States v. Agurs , 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ).
Here, the eyewitnesses were essential to the prosecution's case against Plaintiff at trial, and thus, likely influenced the jury's verdict. Ricciuti 's strong rebuke of the defendants' "ill-conceived attempt to erect a legal barricade to shield police officials from liability" for fabricating evidence used to deprive another of their liberty is equally applicable to Defendant's responsive arguments in this case. See Ricciuti , 124 F.3d at 130.
Defendant appears to improperly describe Plaintiff's claim as one for "malicious abuse of process," contending that Plaintiff fails to demonstrate any issue of fact on this cause of action.[8] (Dkt. 22-25 at 9-11). However, Plaintiff's claim for fabrication of evidence is grounded in his right to a fair trial. See, e.g., Zahrey , 221 F.3d at 344 ; Ying Li , 246 F.Supp.3d at 627-28. This is a separate legal theory from a claim for abuse of process under § 1983. See Tucker v. City of New York , 704 F.Supp.2d 347, 352 n.2 (S.D.N.Y. 2010) (noting that while the plaintiff asserted "a single claim under section 1983," it was grounded in "separate legal theories," including "abuse of process," and the "denial of a 'fair trial' "); Hoyos , 999 F.Supp.2d at 392 (analyzing both claims under separate frameworks); Henry , 2003 WL 22077469, at *4 (same). This point is further illustrated by Defendant's reliance upon several cases for the proposition that "the presence of probable cause negates a claim for abuse of process." (Dkt. 22-25 at 11 (quotation marks and citation omitted) ); see, e.g., Rhodes v. United States , No. 07-CV-470S, 2012 WL 777336, at *16 (W.D.N.Y. Mar. 7, 2012), aff'd , 519 F. App'x 703 (2d Cir. 2013) ; Sforza v. City of New York , No. 07 Civ. 6122 (DLC), 2009 WL 857496, at *17 (S.D.N.Y. Mar. 31, 2009). However, the presence of probable cause does not preclude a claim for the denial of the right to a fair trial. See Garnett v. Undercover Officer C0039 , 838 F.3d 265, 278 (2d Cir. 2016) ("Relatedly, using probable cause as a shield would unduly limit an arrestee's right to relief when a police officer fabricates evidence. Because probable cause is no defense to a denial of the right to a fair trial claim, fair trial claims cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims.").
There is no indication that Defendant's alleged misconduct was ever brought to light before or during the criminal trial. Cf. Dufort , 874 F.3d at 355 ("[A]ssuming arguendo that the [d]efendants *685 attempted to distort the trial record by misrepresenting the nature of [the witness's] identification, it is undisputed that that attempt failed" because the witness's trial testimony revealed the defect, and thus, "[a]ny attempt to distort the evidentiary record was fully mitigated by this disclosure."). Instead, each of the three eyewitnesses provided an in-court identification of Plaintiff as the shooter. (See Dkt. 22-15 at 103; Dkt. 22-17 at 16-17; Dkt. 22-18 at 20-21). Plaintiff's trial counsel was not aware until after the trial concluded that-in spite of these identifications-the witnesses harbored substantial reservations as to whether Plaintiff was the shooter, even after seeing him at trial. (See Dkt. 22-21 at 12, 14-15; see also Dkt. 25-2 at 2). Indeed, Basile has since averred that she did not even look at Plaintiff at the criminal trial despite identifying him as the shooter in open court. (Dkt. 22-21 at 12). For many of the same reasons discussed regarding Plaintiff's claim for malicious prosecution, there are issues of fact as to whether Defendant was wrongfully deprived of his liberty as a result of fabricated evidence. See generally Brandon , 705 F.Supp.2d at 276 (stating that the Second Circuit permits "claims for both malicious prosecution and denial of his fair right to trial based on the same alleged fabrication of evidence" (citing Ricciuti , 124 F.3d at 130-31 ) ).
Therefore, Defendant's motion for summary judgment as to Plaintiff's second cause of action for the denial of his right to a fair trial is denied because a reasonable jury could conclude that Defendant's alleged fabrication of identification evidence resulted in the wrongful deprivation of Plaintiff's liberty.
E. Genuine Issues of Fact Preclude the Application of the Doctrine of Qualified Immunity
Defendant claims that even if there are issues of fact regarding the elements of Plaintiff's causes of action, he is entitled to summary judgment under the doctrine of qualified immunity. (Dkt. 22-25 at 11-13). "The qualified-immunity doctrine shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " X-Men Sec., Inc. v. Pataki , 196 F.3d 56, 65 (2d Cir. 1999) (quoting Harlow v. Fitzgerald , 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ). "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.' " McGowan v. United States , 825 F.3d 118, 124 (2d Cir. 2016) (quoting Wood v. Moss , --- U.S. ----, 134 S.Ct. 2056, 2066-67, 188 L.Ed.2d 1039 (2014) ).
"[T]he matter of whether a defendant official's conduct was objectively reasonable, i.e., whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact." Taravella v. Town of Wolcott , 599 F.3d 129, 134 (2d Cir. 2010) (quotation marks and citation omitted). "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder." Kerman v. City of New York , 374 F.3d 93, 109 (2d Cir. 2004) (citations omitted); see Oliveira v. Mayer , 23 F.3d 642, 649 (2d Cir. 1994) ("Though '[i]mmunity ordinarily *686 should be decided by the court,' that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." (quoting Hunter v. Bryant , 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ) ).
Because the doctrine of qualified immunity "affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability," Zalaski v. City of Hartford , 723 F.3d 382, 389 (2d Cir. 2013) (quoting Messerschmidt v. Millender , 565 U.S. 535, 546, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012) ), the court must use "a deliberately 'forgiving' standard of review" in determining its application. Id. (quoting Amore v. Novarro , 624 F.3d 522, 530 (2d Cir. 2010) ). To this point, "[a]n officer is entitled to qualified immunity if he can establish that there was 'arguable probable cause' to arrest." Adebiyi v. City of New York , No. 13-CV-480 (WFK) (CLP), 2014 WL 4922888, at *5 (E.D.N.Y. Sept. 30, 2014) (quoting Escalera , 361 F.3d at 743 ). Arguable probable cause is an "analytically distinct test for qualified immunity" that "is more favorable to the officers than the one for probable cause." Escalera , 361 F.3d at 743. "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' " Id. (quoting Golino v. City of New Haven , 950 F.2d 864, 870 (2d Cir. 1991) ).
Viewing the facts in the light most favorable to Plaintiff, arguable probable cause did not exist here. The eyewitness identifications of Basile and Grover do not support a finding of "arguable probable cause" because no objectively reasonable officer would believe that their identifications were sufficient if Plaintiff's claims are credited-namely, that Defendant threatened Basile and informed both Basile and Grover that other individuals had identified the shooter from the photo array. See Dufort , 874 F.3d at 354 (recognizing that there is a question of fact as to whether the defendant "manipulated key evidence," and that "[s]uch a 'knowing' violation of [the plaintiff's] Fourth and Fifth Amendment rights would, if proven, be enough to overcome the protection of qualified immunity"); Scotto v. Almenas , 143 F.3d 105, 113 (2d Cir. 1998) ("[I]t would be objectively unreasonable for [the defendant] to believe he had probable cause to arrest [the plaintiff] if [the defendant] himself fabricated the grounds for arrest."). In addition, Picone avers that she only observed the side and the back of the shooter's head, and that she only picked the individual she believed most resembled a Puerto Rican male. (Dkt. 22-21 at 14). This is insufficient to establish even arguable probable cause. See Williams , 2012 WL 511533, at *5 (finding that arguable probable cause did not exist because "[a]ny reasonable officer would conclude that the mere fact that a suspect bears a relative resemblance to the perpetrator does not justify arresting that person absent additional evidence"); see also Banno v. City of New York , No. 06-CV-2270 (RJS), 2015 WL 845709, at *4 (S.D.N.Y. Feb. 25, 2015) (finding that factual issues precluded a determination that "arguable probable cause" existed because there was "evidence that a jury could use to call into question the proximity of [the eyewitness] to the fire, the veracity of [another eyewitness]'s version of the events, and the legitimacy of [the eyewitness's] identification of [the p]laintiff").
Furthermore, courts in this Circuit hold that "qualified immunity is unavailable on a claim for denial of the right to a fair trial where that claim is premised on proof that *687 a defendant knowingly fabricated evidence and where a reasonable jury could so find." Morse , 2012 WL 3202963, at *6 (citing Ricciuti , 124 F.3d at 130 (stating that "[q]ualified immunity is unavailable" where "a reasonable jury could find ... [that the defendants] conspire[d] to fabricate and forward to prosecutors a known false confession almost certain to influence a jury's verdict") ); see Rogers v. Bisono , No. 15 Civ. 6670, 2016 WL 4224072, at *5 (S.D.N.Y. Aug. 9, 2016) ("[The d]efendants cannot be protected by qualified immunity since they allegedly fabricated evidence."); Henry , 2003 WL 22077469, at *4 (finding that "qualified immunity is not available" where there was "a question of fact [as to] whether [the p]laintiff's deprivation of liberty was caused by the fabrication of evidence").
Therefore, Defendant is not entitled to a finding of qualified immunity as a matter of law at the summary judgment stage.
CONCLUSION
For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 22) is denied.
SO ORDERED.

This citation includes the transcript of Grover's testimony at the jury trial on January 20, 2010. (Dkt. 22-15). All citations to this transcript use the numeration denoted by CM/ECF rather than the pagination of the original transcript.

This citation includes the transcript of Basile's and Defendant's testimony at the jury trial on January 21, 2010. (Dkt. 22-18). All citations to this transcript use the numeration denoted by CM/ECF rather than the pagination of the original transcript.

This citation includes the transcript of Picone's testimony at the jury trial on January 21, 2010. (Dkt. 22-17). All citations to this transcript use the numeration denoted by CM/ECF rather than the pagination of the original transcript.

The probable cause standard remains constant from arrest to prosecution. The primary difference between the analyses for probable cause to arrest and probable cause to prosecute is that the latter inquiry focuses "on facts and circumstances available to an officer at a later point in time and in the context of a different decision." Norton v. Town of Islip , No. 12 CV 4463 (PKC), 2016 WL 264930, at *5 (E.D.N.Y. Jan. 21, 2016), aff'd , 678 F. App'x 17 (2d Cir. 2017).
Whereas probable cause to arrest considers an officer's belief that "the person to be arrested has committed or is committing a crime" in light of the facts and circumstances available to him at the time of arrest, probable cause to prosecute considers an officer's belief that "he has lawful grounds for prosecuting the defendant in the manner complained of" in light of the facts and circumstances available to him at the time he initiates the prosecution.
Id. (citations and footnote omitted).

Defendant does not contest Plaintiff's ability to establish the second element of a malicious prosecution claim-that the criminal proceeding ultimately terminated in his favor.

Defendant also argues, "[t]o the extent that it appears [Plaintiff is] now arguing that [Defendant] 'created' evidence, as opposed to it being 'withheld' despite an 'affirmative constitutional obligation to come forward,' " this argument is beyond the scope of the pleadings. (Dkt. 27 at 5). However, Plaintiff's complaint alleges both that Defendant "withheld material exculpatory and impeachment evidence from prosecutors," and that the "faulty evidence" used to convict him at trial arose from Defendant's alleged manipulative and coercive tactics during the identification procedures. (Dkt. 1 at ¶ 40). These allegations set forth facts that support a claim of evidence fabrication.

This citation includes the transcript of the Wade/Huntley hearing, which took place on August 18, 2009, and September 8, 2009. (Dkt. 22-14). All citations to this transcript use the numeration denoted by CM/ECF rather than the pagination of the original transcript.

"When a plaintiff asserts an abuse-of-process claim under Section 1983, 'we turn to state law to find the elements.' " Mangino v. Inc. Vill. of Patchogue , 808 F.3d 951, 959 (2d Cir. 2015) (quoting Cook v. Sheldon , 41 F.3d 73, 80 (2d Cir. 1994) ); see Coggins v. County of Nassau , 254 F.Supp.3d 500, 518-19 (E.D.N.Y. 2017) ("In order to establish liability for malicious abuse of process under Section 1983, a plaintiff must establish the claim's elements under state law as well as the deprivation of a constitutional right." (citing Cook , 41 F.3d at 79-80 ) ). "A plaintiff may assert a malicious abuse of process claim where a defendant: '(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.' " Coggins , 254 F.Supp.3d at 519 (quoting Savino v. City of New York , 331 F.3d 63, 76 (2003) ).